D2BPCOLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              12 CR 802 (KBF)

TREVOR COLE, ET AL.,

           Defendants.

------------------------------x

                                  New York, N.Y.
                                  February 11, 2013
                                  1:37 p.m.

Before:

                HON. KATHERINE B. FORREST,

                              District Judge

                     APPEARANCES

PREET BHARARA,
    United States Attorney for the
    Southern District of New York
BY:  PARVIN MOYNE
    Assistant United States Attorney

KIERSTEN FLETCHER
    Attorney for Defendant ACEVEDO

BENJAMIN HEINRECH
    Attorney for Defendants Jean-Philippe and Cole

1           (In open court)

2           (Case called)

3           MS. MOYNE:  Good afternoon, your Honor.  Parvin Moyne
4   for the government.

5           THE COURT:  All right.  Good afternoon, Ms. Moyne.

6           MS. FLETCHER:  Kiersten Fletcher for Jeremy Acevedo.

7           THE COURT:  Good afternoon, Miss Fletcher.

8           MR. HEINRECH:  Good afternoon, your Honor.  Benjamin
9   Heinrech.  I represent Dominique Jean-Philippe, and for the
10  purposes of today's appearance, your Honor, I'm standing in for
11  Mr. Marino, co-counsel, who represents Mr. Cole.  He took ill
12  this afternoon, your Honor.

13          THE COURT:  All right.  All right.  And I note that
14  Mr. Cole, Mr. Jean-Philippe and Mr. Acevedo are present here in
15  the courtroom today.

16          I don't want to hear from Mr. Cole directly.  Which of
17  the two gentlemen, to your right or left?  That's Mr. Cole.
18  Mr. Heinrech, is Mr. Cole amenable to your filling in for his
19  counsel today.

20          MR. HEINRECH:  He is, your Honor.

21          THE COURT:  All right.  Thank you.  We are here for a
22  status conference in this matter.  There's a trial that's been
23  set for March 4th, but I also know that there have been -- that
24  was, at least according to the docket that I had seen, that
25  trial was set.  That trial date was set on November 28th, 2012.

1    But at that same conference with Judge Wood there was also some
2    discussion about the next conference, which is now setting a
3    date for any motions, which the parties -- that the defendants
4    may want to bring.
5            And so since this is our first meeting together, I
6    believe we should talk about where we are with discovery, what
7    motions the defendants may want to bring, and whether or not
8    this trial date is the right trial date, or whether or not it
9    should be delayed if there are some motions or other pretrial
10   proceedings which may need to occur.
11           So, Ms. Moyne, why don't you report on where things
12   are.
13           MS. MOYNE:  Yes, your Honor.  Discovery has been made
14   in this case, and it consists primarily of phone records,
15   warrants for phone records, such as cell site data and GPS
16   data, search warrants for phones that were seized at the time
17   of their arrests, a search warrant of an apartment occupied by
18   defendant Dominique Jean-Philippe, and there were some
19   post-arrest statements.
20           There was photo arrays shown to witnesses and
21   identifications made pursuant to the photo arrays.  That's
22   probably the evidence in this case that may be subject to a
23   motion.
24           Other discovery in this case includes some
25   surveillance videos and evidence seized from the location of

1    the crime.  There's actually three different locations.  There
2    was a female victim in this case, and the police seized a lot
3    of evidence from her apartment.  The allegation is that the
4    defendants went to a male victim's apartment, as well, and
5    robbed that apartment or burglarized that apartment, I guess.
6    There was evidence seized from the male victim's apartment, and
7    then also a vehicle was stolen from the female, and there was
8    some evidence found in the vehicle.  That evidence has been
9    tested for DNA, but the results are still pending.
10            In December I was told that it would take about 60
11   days; so that we're expecting the results about at the end of
12   this month, but we've not received them yet.  And, in fact, one
13   of the things that I intend to do this week is to confirm with
14   the medical examiner that, in fact, we will be getting the DNA
15   results by the end of the month.  That's the only outstanding
16   discovery, is the DNA results, and then any discovery should
17   that be relevant to any of the issues that may come up at trial
18            THE COURT:  All right.  Okay.  Ms. Fletcher or
19   Mr. Heinrech, what's your view?  Have you received this
20   discovery that's been mentioned, and do you believe there's any
21   other discovery, apart from what Ms. Moyne has mentioned, that
22   you're expecting to receive that you have not received?
23            MS. FLETCHER:  Yes, your Honor, we have received that
24   discovery.  My understanding from speaking with Ms. Moyne is we
25   may also be receiving additional cell site discovery; so we

1    await that, as well as the DNA evidence.

2               MS. MOYNE:  That's correct, your Honor.  We've turned
3    over the records from the cell site, but what the FBI does is
4    they prepare maps that help see where the cell phone towers
5    are, and it sort of makes the records make sense and it shows
6    the relevance of the records.

7               I've informed defense counsel about that.  Although
8    those aren't technically Rule 16, I would provide them as soon
9    as we have them.  There's been a delay at the FBI, and I expect
10   to receive those maps by the end of the month as well.  If they
11   come sooner, I will, obviously, turn them over as soon as I get
12   them.

13              THE COURT:  Okay.  Mr. Heinrech?

14              MR. HEINRECH:  Yes, let me work backwards a little
15   bit.  Relative to the DNA results the government is
16   referencing, if, in fact, they're expecting DNA results back
17   from the city medical examiner's office that is down here in
18   Bellevue, just my experience in the last two months with a
19   number of cases, state cases albeit, but where DNA was
20   submitted earlier, because of the flooding damage they've had
21   down there, the delays have been inordinate.  So, I don't know,
22   that ultimately may have some effect on whatever scheduling we
23   set.  You know, maybe Miss Moyne should call down there and
24   check with them if that, in fact, is the case in this instance.
25              Relative to motion practice, Judge, there would be, I

1     would assume, a motion drawn to the identification procedures
2     employed here relative to certainly my client, Dominique and
3     possibly for Mr. Cole.
4              And as to Dominique, the search warrant information
5     related by Miss Moyne as relates directly to my client, I'm
6     sure that will also be the subject of a motion.  Be that as it
7     may --
8              THE COURT:  Was mr. Cole's apartment also searched?
9     Or not his apartment, but was he part of the search warrant, or
10    was it only Mr. Philippe?
11             MS. MOYNE:  No, it was only Mr. Philippe's.
12             THE COURT:  All right.
13             MR. HEINRECH:  We had some discussion right before the
14    conference began relative to trial date, Judge, and maybe we
15    can work back from there, if that's okay with the Court.  I
16    think that the middle of the month, May 16th, sometime around
17    that period from May 16th to a little bit after would work.  I
18    think, as we get to the end of June it becomes problematic for
19    everybody.  So trial date in there, and then motion practice
20    schedule sometime before then.
21             THE COURT:  Let me ask, so I can have a sense of it.
22    How long is this trial expected to be at present, about two
23    weeks?
24             MS. MOYNE:  I think certainly within two weeks.  I
25    think we'll spill over one week, but within two weeks.

1    THE COURT:  All right.  So what I'll do is I won't put
2 a jury trial down for those two weeks.  You will get priority
3 over any civil trials.  So what do we have, Joe, the middle of
4 May, the first Monday after -- on or after May 16th?
5    THE DEPUTY CLERK:  May 20th.
6    THE COURT:  All right.  May 20th, how does that sound
7 for people?  Is that all right, Mr. Heinrech?
8    MR. HEINRECH:  Sounds fine with me.
9    THE COURT:  All right.  Mr. Acevedo, for you?
10    MS. FLETCHER:  Yes.
11    THE COURT:  Miss Fletcher, right?
12    MS. FLETCHER:  Yes.
13    THE COURT:  All right.  Okay.  Ms. Moyne, you're able
14 to do that?
15    MS. MOYNE:  Yes, your Honor.  Thank you.
16    THE COURT:  Okay.  So then we'll set this matter down
17 for trial, since motions haven't been made yet and there may
18 well be some motions to come.  In fact, it sounds like counsel
19 for at least two of the defendants is so anticipating that.
20 We'll set a trial down, not for March 3rd or 4th or whatever it
21 was, which is really I think a placeholder date, but we'll set
22 it down for May 20.
23    May 20 will then be a hard trial date, which we will
24 only move off of for good cause shown.  And, hopefully,
25 Ms. Moyne, if there is an issue with the DNA, you'll be able to

1    take care of that and get it to the defendants as quickly as
2    possible, given all the various constraints so it can be part
3    of any motion practice.
4            But if the defendants don't receive the DNA evidence
5    and they're able to make other motions in the absence of that,
6    we're going to set a schedule for the other motions; so for
7    instance, the post-arrest statements or something of that
8    nature, which you won't need the DNA for.  But if there are
9    DNA-specific motions, those can be held in abeyance until
10   you've gotten, obviously, the DNA evidence, and you'll be fully
11   entitled to bring subsequent motions under these circumstances.
12           So let's talk about getting these motions brought
13   relatively soon because if there is some traction to these
14   motions, obviously, it will I think effect significantly
15   whether the case proceeds to a trial or in some other fashion,
16   if these are, you know, potentially significantly effecting the
17   evidence of this case.  So let's see when we can bring these
18   on.
19           Mr. Heinrech, Ms. Fletcher, what kind of timing -- I'm
20   not sure, Ms. Fletcher, if you're planning on bringing them on.
21   You don't even need to say if you are not.
22           MS. FLETCHER:  We are contemplating certainly
23   regarding identification procedures.  I think we would ask for
24   a date maybe four weeks out, at least, from now, if possible.
25           THE COURT:  All right.  What I would like to do is to

1    put the motions for the matter on the same schedule and have
2    all of the motions, except for the DNA.  If that can come in
3    before then, terrific.  And you can make any motions.  It may
4    be that you can make a motion as to the DNA sort of in the
5    abstract, which is assuming that the DNA comes back positive,
6    it should not be admitted for the following reason.  It may go
7    to the same issues you're already going to brief from some of
8    the other evidence.
9              But, Mr. Heinrech, what do you think about four weeks
10   from now; is that too late, too soon?
11             MR. HEINRECH:  That's fine, Judge.  I just note for
12   the rest of the scheduling that from March 17th through
13   April 8th, I'm away.
14             THE COURT:  All right.  Well, you'll have made the
15   motion.
16             MR. HEINRECH:  Yes.
17             THE COURT:  So what we're going to do is we're going
18   to put the motions down to be made no later than -- not later
19   than March 11th.  All right?  So you'll have made your motions.
20   Defendants will make motions on 3-11-13.
21             Then, Ms. Moyne, when can you respond?
22             MS. MOYNE:  If I could have two weeks, your Honor.
23             THE COURT:  All right.  So that would be the 25th for
24   the government response, that's 3-25.
25             And, Mr. Heinrech, when do you return?

1  MR. HEINRECH: I return on April 8th; so....

2  THE COURT: All right. How about if we make your
3  reply then due on the 17th?

4  MR. HEINRECH: That's fine.

5  THE COURT: All right. So we'll do defendant's reply
6  on 4-17. The Court will rule promptly, and I'm going to ask my
7  deputy to make sure that I have the papers, we put something on
8  our calendar to rule very promptly because you'll be going to
9  trial, at that point, just a little over a month from the date
10 of those motions, and it could significantly impact how you
11 prepare for trial.

12 So I'll try to get back to you as quickly as I can on
13 the Court's ruling on those motions, so people know how to
14 proceed. And I would expect no later than the end of -- before
15 the end of April. So, Joe, can you just make sure that we've
16 got that calendared for us?

17 THE DEPUTY CLERK: Absolutely.

18 THE COURT: So by the end of April you'll have the
19 answer to those motions at least, unless something comes up.
20 In which case, I'll let you know if there's a reason why we
21 can't meet that. Any other motions, if they don't fit into
22 this time frame, bring them on as quickly as we can. Try to
23 agree to a schedule as between yourselves, and I'm sure it will
24 be acceptable to the Court if there's something else.

25 And what I'm thinking is, not now, the in limines

1     we'll talk about those in a moment, if there's something in
2     particular relating to the DNA or other discovery that comes up
3     late, the cell site discovery or something of that nature, if
4     that did give rise to a motion, to bring that on as quickly as
5     we can or on the same schedule, if you're able to.  Sound
6     reasonable?
7             Okay.  So let's count back now from May 20th and come
8     up with our date for our motions in limine.  You'll know what
9     you're dealing with in terms of evidence, hopefully, by the end
10    of April.  That will be April 30th.  So why don't we have
11    motions in limine by May 10th.  Does that work for people?
12            All right.  And then what I would like to do is also
13    get the pretrial materials by the 13th, May 13.  We'll have the
14    final pretrial on the 15th.  Joe, can you fit it on the 15th?
15            THE DEPUTY CLERK:  14th?
16            THE COURT:  14th is fine.
17            THE DEPUTY CLERK:  At 1:00.
18            THE COURT:  So final pretrial conference at May 14 at
19    1:00 p.m.  Now, if I -- the final pretrial materials or motions
20    in limine, the motions in limine on the 10th.  They'll come in
21    on the 10th.  You should respond to them -- actually, what
22    you'll need to do, you'll need to bring them in on the 3rd, put
23    them in on the 3rd, and then respond to them on the 10th.
24            MR. HEINRECH:  The 14th is actually not going to be
25    good late in the day.  Early in the day would work.  Late in

1    the day would not.
2             THE COURT:  Would 1:00 work?  It shouldn't take more
3    than an hour.
4             MR. HEINRECH:  Yes, 1:00 would work.
5             THE COURT:  So 5-14 at 1:00 p.m. would be our final
6    pretrial conference.  For the motions in limine, here we've got
7    a couple of choices.  Let me just find out what you folks would
8    prefer.  I will rule on those before or at the final pretrial,
9    probably before just so that you'll have, again, a better view
10   of if there are particular things that come up as to what's
11   going to happen at the trial, and the final pretrial is on the
12   15th.
13            Given that, I'll read them over the weekend; so I do
14   need them on the 10th, but not until the end of the day on the
15   10th.  Would you prefer to make them on the 6th and respond on
16   the 10th, or prefer to make them -- this is really for the
17   responders.  You both might -- it really would be the
18   defendants.  Or are you likely to do it on the 3rd and respond
19   on the 10th?  I mean, bring them on the 3rd, and whoever is
20   responding would oppose on the 10th, whichever would you
21   prefer.  Does the Friday or the Monday matter to you folks?
22            MR. HEINRECH:  No.
23            THE COURT:  Then let's do it on the 3rd, and then the
24   other side can oppose on the 10th; so that's one week.  All
25   right?  And then the pretrial materials on the 13th, and by

1    that, for the criminal trials I do ask for you folks to
2    coordinate on jury instructions, which I know some people think
3    is unusual for a criminal trial, but it does help highlight
4    where there are differences between the government and defense
5    counsel in terms of which instructions there are really no
6    issues as to and for which instructions there are issues as to.
7           So we even may focus on two or three instructions, as
8    opposed to having instructions where I'm having to reconcile
9    nuanced language as between two sets.  And then usually I'll
10   come up with own, a third.  It just makes the record more
11   complicated.  So what I prefer to do is have you folks
12   coordinate on jury instructions.
13          You don't need to do the typical instructions.  I'm
14   happy to give you copies from prior trials, but you know what
15   they are.  I know the U.S. Attorney's Office has certainly got
16   them.  Mr. Fletcher and Mr. Heinrech, you folks have not been
17   before me on a criminal trial, but it's a standard set of
18   instructions for the general set.
19          But I'm happy to give you those which I'll use in
20   preference over anything that you might have, unless you've got
21   a real issue, obviously, with what I've proposed.  But for the
22   substantive causes, the substantive charges and the elements,
23   I'd like you folks to coordinate.  It doesn't matter to me,
24   obviously, who holds the pen.
25          Sometimes it's easier for the government to hold the

Case 1:12-cr-00802-KBF   Document 23   Filed 02/21/13   Page 14 of 19      14
D2BPCOLC

1    pen, but sometimes, if you folks can't agree, I'll take two
2    sets, one from defense counsel -- I'll take four sets, if I
3    have to, from each of the defense counsel and the government.
4    But I'd prefer to get either one combined set, which then lists
5    where there are differences, or if we have to go with
6    individual sets, I'll do my work and reconcile them.  Okay?
7    That's the main work for the 13th, apart also from objections
8    to trial exhibits and things of that nature, as set forth in my
9    rules.
10            Now, let's do a status conference, since we're only in
11   February now.  Let's have another status conference, I'm going
12   to say, in -- now, when you get back, Mr. Heinrech, well,
13   that's going to put us -- let's see, you're gone from the --
14   there really isn't a lot of time to have a status conference if
15   you're going from the 18th to the 8th.  Well, no, I suppose we
16   could do it on the 10th.  Let's do an April 10th status
17   conference.  Mr. Heinrech, can you do that?
18            MR. HEINRECH:  I can do that, Judge.  What time are
19   you thinking of?
20            THE COURT:  1:00.
21            MR. HEINRECH:  1:00 is fine.
22            THE COURT:  And the purpose for that is just to make
23   sure that were are on track.  We'll have papers that will be in
24   various stages at that point, but it really is to make sure
25   that the discovery has come in and that things are on track.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:12-cr-00802-KBF   Document 23   Filed 02/21/13   Page 15 of 19   15
D2BPCOLC

1               Now, if no counsel believes that we need a conference
2    and that you folks have conferred with each of the three
3    defense counsel and the government, and you all are in
4    agreement that things are proceeding very smoothly and that
5    you're on track, you can just set that forth in a letter and we
6    can adjourn the conference.  It's not necessary that you appear
7    before me if it's all on track.
8               Now, if anybody wants to have a conference, I would
9    have a conference.  My main concern is just to make sure that
10   no surprises sneak up on us.  Okay?
11              MR. HEINRECH:  Let me just inquire, Judge, relative to
12   the letters.  Is the letter to be faxed to your office or part
13   of the ECF?
14              THE COURT:  I will post it on the docket; so you can
15   fax it to my office, and then I will post, as I do, and you
16   just be aware of this, all letters.  So if there's anything
17   confidential in a letter that you wouldn't want posted
18   publicly, you should note it as something to be filed under
19   seal, and that may come up.  Otherwise, everything gets posted
20   publicly on the docket, and I will take care of it.
21              It's my practice to make sure that we have a complete
22   record of everything on the docket.  That also means that
23   substantive e-mails shouldn't occur, but if they did, which
24   happens from time to time, that I would post those on the
25   docket too.  I just print them out and post them.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:12-cr-00802-KBF   Document 23   Filed 02/21/13   Page 16 of 19    16
D2BPCOLC

1            Okay.  How much time, Ms. Moyne, has run on the speedy
2    trial clock?
3            MS. MOYNE:  Your Honor, I believe we lost two days
4    from the time Mr. Cole was arrested.  He was arrested during
5    hurricane Sandy on October 31st, and time wasn't excluded until
6    November 2nd.
7            THE COURT:  All right.  So I think we're okay.  And we
8    had some extensions and exclusions after that.
9            MS. MOYNE:  Your Honor, one question on the motions.
10   If a motion needs to have a hearing, should we just contact
11   your chambers to find out a hearing date?
12           THE COURT:  Yes.  I mean, for instance, if there's
13   going to be a motion for suppression and a hearing is requested
14   and/or required, then I'll probably set one myself --
15           MS. MOYNE:  Okay.
16           THE COURT:  -- as soon as I have any suspicion that
17   that might be useful.  But if you folks know, based on the
18   nature of the motion, as you folks are even talking about it,
19   you know, if you talk about one or you, in discussions, realize
20   that there is one coming, then confer about whether or not you
21   think it is going to be necessary at such a hearing so we can
22   get people lined up and get some dates proposed.  And then,
23   obviously, given the short time frame that we'll be on, that
24   will be prioritized.  And what we'll do is we'll do it probably
25   immediately after the reply comes in.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:12-cr-00802-KBF   Document 23   Filed 02/21/13   Page 17 of 19      17
D2BPCOLC

```
 1              MR. HEINRECH:  Very good.
 2              THE COURT:  That would be my view.  Now, for the
 3   briefs, I think for the criminal motions my rules provide --
 4   but in any event, you should follow -- that you should give the
 5   Court courtesy copies as they come in.  Don't wait until things
 6   are fully briefed, as I do in my civil matters, because I'll
 7   look at something, particularly something like potential
 8   suppression motions, right as they come in, the day they come
 9   in or the day after so I can get a sense of what issues are
10   there.  And I may ask a few questions also based upon the
11   motions.  For the government, in particular, to respond to
12   these letters.  Okay.
13              Is there anything else we should raise?
14              MS. MOYNE:  I mean, the government moves to exclude
15   time under the Speedy Trial Act, and I don't know if it's your
16   Honor's preference to do it to the trial date or just to the
17   status on April 10th, but in order to allow the parties to
18   decide whether any motions should be made and draft the
19   motions.  I know once the motions have been made, obviously,
20   it's automatically excluded, but up until that point.
21              THE COURT:  All right.  Let me ask you, Mr. Heinrech,
22   on behalf of the two defendants that you're representing here
23   today?
24              MR. HEINRECH:  There is nothing left, and we have no
25   objection to the exclusion of time.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    THE COURT:  All right.  Miss Fletcher?

2    MS. FLETCHER:  Mr. Acevedo has no problem with that.

3    THE COURT:  All right.  The Court does find that it's
4    in the interest of justice to exclude time prospectively
5    between now and May 20th, which is the date set for trial, to
6    allow the defendants in this matter to review the discovery,
7    some of which has been produced already and some of which is
8    still to come; and also to contemplate any potential motions
9    that they may have and any other pretrial strategic matters
10   that they may be considering; and that those interests are in
11   the interest of justice and outweigh the defendants, each of
12   the three defendants, and the public in a speedy trial.  So the
13   time is prospectively excluded.

14   Mr. Heinrech, I see you want to raise something?

15   MR. HEINRECH:  Yes.  As the government mentioned,
16   there is a disk which contains some video on it.  I have been
17   provided with that disk.  I thought that a disk was made
18   available in the library of where the defendants were being
19   held.  Evidently, that hasn't happened.

20   They're about to be -- they're being transferred
21   today.  I'm not sure whether it's MCC or MDC.  Once that is
22   settled and we know where they are, I'm asking if the
23   government will make a disk available for them in the library.

24   THE COURT:  All right.  Ms. Moyne, would you make that
25   available?

Case 1:12-cr-00802-KBF   Document 23   Filed 02/21/13   Page 19 of 19      19
D2BPCOLC

```
 1              MS. MOYNE:  I can do that, your Honor.  The video
 2   surveillance is what we're talking about, I assume?
 3              MR. HEINRECH:  Yes.
 4              MS. MOYNE:  I can make that available to both, either
 5   the MCC and MDC or, you know, if they're at the same facility,
 6   to that facility.
 7              THE COURT:  All right.  You'll make appropriate
 8   arrangements for whatever, whether it needs to be in one room
 9   or two, wherever the defendants, those two defendants are.
10              I note that Mr. Acevedo is on release, and that's
11   going to be continued, as I understand it, Ms. Moyne?
12              MS. MOYNE:  Yes, your Honor.
13              THE COURT:  Mr. Acevedo will remain on release.
14   Anything else?
15              MR. HEINRECH:  Nothing by the defense here, your
16   Honor.
17              THE COURT:  Okay.
18              MS. FLETCHER:  No.
19              THE COURT:  All right.  Then we are adjourned.  I'll
20   put out a short order with some of these dates contained in it.
21   Thank you.
22              MS. MOYNE:  Thank you, your Honor.
23              (Adjourned)
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300