# PELUSO & TOUGER, LLP
### ATTORNEYS AT LAW
### 70 LAFAYETTE STREET
### NEW YORK, NEW YORK 10013

TELEPHONE: (212) 608-1234
FACSIMILE:  (212) 513-1989

January 17, 2014

Honorable Katherine B. Forrest
United States District Court Judge
Southern District of New York
500 Pearl St.
New York, New York 10007

  Re: <u>United States v. Cole et.al.</u>,
    12 CR 802 (KBF)

Your Honor,

I am writing this letter relative to the Fatico Hearing conducted on January 15, 2014. There were two main issues presented at the hearing. One was whether Ms. Adams was raped during the incident and the second was whether a ransom was demanded for the release of Ms. Adams and Mr. James.

As regarding the issue of the alleged rape of Ms. Adams the Court's decision can only be based on the credibility of her testimony as there is absolutely no physical evidence to support her accusations against the defendants. While the accusation of rape is obviously a highly charged emotional issue in this case the evidence garnered at the Fatico hearing clearly brings into question the credibility of Ms. Adams.

Ms. Adams testified that she has been living with a known drug dealer for four years. During this time period Mr. James paid all of the bills, bought her expensive gifts including among other things a car. She also testified that her own daughter robbed her and Mr. James of narcotics proceeds when they lived at another apartment. Ms. Adams claimed that she was not involved in that robbery at all and received no benefits from it. Yet Mr. James testified that at first he believed that Ms. Adams was involved in that robbery (p. 128) and the first words Mr. James spoke when he entered the subject apartment and saw the men standing there with knives and a gun was "Jeanette you set me up" (p.128). This statement proves that at the time of the charged robbery Mr. James still felt that his live in girlfriend of 4 years was inclined to set him up to be robbed at gun and knife point. It doesn't matter that in fact Ms. Adams had not been involved in the plan to rob Mr. James what is important to the issue at hand was that Mr. James felt that Ms. Adams was capable of doing such a thing even after he had fully supported her for four years and lavished her with expensive gifts. If Mr. James himself believed that Ms. Adams was capable of this I believe that speaks loud and clear as to the credibility that this Court should give Ms. Adams on the issues herein.

But, Ms. Adams actual conduct towards Mr. James at the end of the incident speaks even louder to her integrity and reliability. Mr. James testified that after the robbers had left he heard Ms.

Honorable Katherine B. Forrest
January 17, 2014
Page 2 of 4

Adams walking around the apartment and for a moment believed that Ms. Adams was going to leave him there in the apartment hog tied and bleeding. Ms. Adams herself testified that she was going to leave Mr. James in the apartment but she finally decided to free him after she saw how badly he was bleeding. Ms. Adams was going to leave her live in boyfriend of four years who had supported her, hog tied in the apartment, even after she was freed. The fact that she did not follow through on these thoughts is of less importance than the fact that she thought about doing it, when the issue at hand is whether this Court can trust the accusations made by Ms. Adams against the defendants.

Could it be that she was so mad at Mr. James because of the fight they had had a few days ago and the fact that he was moving out had got her so angry that she was just going to leave him there as retribution. If she is capable of doing this to some one she loved as retribution for the way he treated her, is it inconceivable that she would make up an allegation of rape against two perfect strangers who had held her captive for two days and urinated on her?

However proof of Ms. Adams lack of credibility is not confined to the above. Ms. Adams although robbed by her daughter and Lisa Hilton still maintained a relationship with her daughter and most incredibly with Lisa Hilton's mom, Grace. The relationship was so close that in fact Ms. Adams and Grace had been together shortly before the subject robbery occurred. If it is indeed true that Ms. Adams was not involved with the robbery perpetrated by her daughter and Ms. Hilton against Mr. James and herself is it normal that she would continue a relationship with the mother of one of the people who robbed her. While it is true that Ms. Adams explained this by stating that why should she not stay friends with Grace, she didn't do anything. This explanation is hard to believe. I wonder how many people after being robbed by someone they know maintain a friendship with close family members of the person who robbed them. This relationship certainly brings into question whether Ms. Adams was telling the truth when she said she was not involved in her daughter's robbery at all and if she was lying about that she could be lying about anything. Especially when Mr. James statement of "Jeanette you set me up" is also considered.

The facts of the robbery and alleged rape as related by Ms. Adams also call into question her credibility on whether she was in fact raped. She testified that the robbers had two guns (p.18) but Mr. James testified that when he arrived he only saw one gun (p.101). It seems highly unlikely that the robbers would not use a gun to intimidate Mr. James if they in fact had one.

Ms. Adams also testified on direct that after being taken inside her apartment that after a certain amount of time her arms, legs, mouth and eyes were taped. It was only on cross-examination that she admitted that the original attempts at taping her failed completely and that the robbers had to send someone to get more tape. Again this is not a major factor because it is agreed that ultimately she was taped and remained that way for quite some time but it does demonstrate again her willingness to exaggerate the facts.

Ms. Adams testified that her own daughter didn't even know where she lived. On its face that testimony seems innocuous however when considered in light of the other evidence in this case specifically that when questioned by the FBI she stated that her daughter did know where she

lived and that she had recently wired her money (another fact she denied before this Court). It begs the question of why would she refuse to admit that her daughter knew where she lived. Could it be that she didn't want anyone to believe that her daughter had any involvement in this robbery in light of the fact that the same person Lisa Hilton who set this robbery up, was the same person her daughter was involved in 2 years ago and that she was out with Lisa Hilton's mother, Grace on the night the robbery started. So she decided she had to make up the fact that her daughter didn't even know where she lived to protect her. It is obvious that robbers knew about Mr. James and his stash locations because Mr. James testified that he didn't have to tell them that information. (p.131). Some one had to give them that information. By lying to the Court Ms. Adams was attempting to protect her daughter from that accusation the same way she is lying to the Court about being raped to protect herself from that accusation.

Furthermore, Ms. Adams says she was raped with her legs still taped closed by three different individuals. This certainly begs the question whether it was even possible for her to be raped under those circumstances.

Finally there is absolutely no corroborative evidence presented to support Ms. Adams bold but highly emotional accusations. Ms. Adams negated any chance of that occurring if the rape actually did occur by refusing to tell anyone but her sister that she was raped until weeks after it happened.

She testified to this Court that she told her sister that she was raped when her sister arrived at the apartment after Ms. Adams freed herself. It is interesting to note that Mr. James does not verify that testimony. He heard no such statements that evening. Also, although according to Ms. Adams' testimony it is her sister who convinces her to call the police that night (she testified that she was not going to call the police) her sister does not accompany her to the hospital to be with her after this entire ordeal and most importantly does not even try to convince her to save her clothing or any other evidence that could later prove that she was in fact raped. Her sister having been informed that Ms. Adams has been raped is so infuriated by this fact that she convinces Ms. Adams to call the police but does not accompany her to the hospital or convince her to preserve any physical evidence of the occurrence. This testimony is highly suspicious on its face.

When the statements of Mr. Accilien are also considered with all of the above and the arguments made after the hearing to the Court directly, the defendant most respectfully requests that the Court find that the Government did not prove by the preponderance of the evidence presented that Ms. Adams was raped by anyone let alone Trevor Cole.

Regarding the second issue of whether there was a ransom demand, which necessitates a six-point enhancement under the Guidelines, the law is clear that the conduct of the defendants does not qualify under §2A4.1. While there is no case law on point in the 2d Circuit case law from other districts supports the position.

This was a case that involved luring a known drug dealer into an apartment to rob him of his drugs and money and then when the robbers decided they did not receive enough money from the initial victim, Mr. James they attempted to lure another individual into the apartment to rob

Honorable Katherine B. Forrest
January 17, 2014
Page 4 of 4

him of more money. What is important to note for this Court is that this is not only the defendant's position in this matter, it is the position of the victim herein who testified to exactly that theory during the hearing:

Q - you felt that Jeannette had lured you into the apartment to be robbed, correct
A - Yes, basically
Q - Right?
A - Right.
Q - And in fact you were robbed?
A – Yeah.
Q – And then as things developed, the robbers, they attempted to get you to lure your brother into the apartment also to be robbed, correct?
A – Yes.
Q – That's what happened, right?
A – Yeah.

Thus, it is clear from the testimony that no ransom was ever demanded or received. "Although "ransom" is not defined by the Guidelines, we are bound to give the term its ordinary meaning." United States v. Rutkowski, *814 F.2d 594, 599 (11th Cir.1987)*. *Black's Law Dictionary* defines ransom as "[t]he money, price, or consideration paid or demanded for redemption of a kidnapped person or persons; a payment that releases from captivity." *Black's Law Dictionary* 1260 (6th ed.1990). Nothing in that definition fits the facts herein thus the Government has not met their burden of proving by the preponderance of evidence that a ransom was demanded as a result the additional 6 point enhancement under §2A4.1 of the Guidelines should not be added to the defendant's guideline calculation.

Thank you very much for your consideration of this matter.

Respectfully yours,

David Touger

cc: AUSA Parvin Moyne
    Benjamin Heinrich, Esq.