# PELUSO & TOUGER, LLP

ATTORNEYS AT LAW
70 LAFAYETTE STREET
NEW YORK, NEW YORK 10013

TELEPHONE: (212) 608-1234
FACSIMILE: (212) 513-1989

January 24, 2014

Honorable Katherine B. Forrest
United States District Court Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

Re: <u>United States v. Cole</u>, 12 CR 802-01 (KBF)

Your Honor,

I am writing to you relative to the sentencing of the above-mentioned defendant currently scheduled for Thursday January 30th at 10:00AM. Attached to this letter are letters from Mr. Cole, Mr. Cole's mother, relatives, and friends. Reading these letters it becomes obvious very quickly that Mr. Cole was raised in a loving household surrounded by caring, loving and law-abiding family. Mr. Cole as a very young man fit right in with that description. He was a pleasure to be with, thoughtful, caring and helpful to all those around him. Unfortunately as Mr. Cole grew older and the influence of his family waned he got sucked in by the bad influences around him and to be quite frank as I believe his family and friends have in their letters to Court, Mr. Cole became the opposite of what he was and how he was raised. This as Mr. Cole admits was noone's fault but his own and he deserves full responsibility for it. He was still a young man, a mere teenager and he made terrible choices. These choices led him directly to where he is today standing before your Honor facing the rest of his life in jail. It is the defendant's position that such a sentence is not necessary to teach Mr. Cole the proper lessons or to give him the rehabilitative programs he needs. The letters demonstrate that although Mr. Cole has had his troubles he has family and friends who love him and who think that he is a good person at heart and can be a productive member of society again. They vow to be there for him when he is released from prison and keep a closer eye on him. Obviously, there is no excuse for turning to criminal conduct but it does not mean that because Mr. Cole made bad choices when he was 18 and 19 years old and continued along those lines into his early twenties that all hope is lost for that individual and that he has not learnt his lessons and still can be everything his family and friends thought he would be in the future.

In reading the letters from his friends and family and most importantly from Mr. Cole himself it becomes quite clear that Mr. Cole highly regrets the mistakes and bad choices he has made in his life and has made an honest and heart felt decision to turn his life around. Mr. Cole has had plenty of time to contemplate his life decisions due to this arrest and he has realized what he has

plenty of time to contemplate his life decisions due to this arrest and he has realized what he has done wrong in his life and why he has made, in the past, the wrong decisions to get involved in criminal activity. Unfortunately as a very young man he ended up being influenced by the wrong people. While I am sure his mother and family did all that they could, the lure of the street to a young Trevor Cole was too strong. He began to run with an older crowd and the downward spiral of his life began. His role models became the men on the street with the big cars and the money rolls. This led to the inevitable criminal involvement, smoking of marijuana and involvement with the criminal justice system. However, as Mr. Cole has grown up he now realizes the errors of his former lifestyle and this latest prison time has afforded him the time to contemplate that decision and realized that criminal conduct cannot be the answer to the problems that life will throw at him. He is now determined to leave criminal activity behind him and become a reputable and respected person in his community. He knows now that the only answer to life's problems his hard work and diligent effort. As the Court is aware Mr. Cole is a father and he wants desperately to not only be around his children as they grow up, he wants to set a positive example for them because he knows all to well their future if he is not.

I do not profess to have seen as many people as the Court has in its experience but in my 29 years representing people charged with crimes I have seen many and Mr. Cole is one of the few who certainly seems to have learnt from his mistakes that have brought him before this Court for sentence. He has used this experience to reassess his life and take responsibility for it and really discover what is important in life.

When I first met Mr. Cole he had a different attitude than he has now. His attitude at that time was how was I going to get out of this so I can get on with my life. But as I got to know Mr. Cole better his attitude and his thoughts on life began to change. He now wants very much to be a positive influence on society and not the selfish youth he was. He wants to get a job and help support his family. He wants to spend time with his family instead of the boys out on the street. Quite frankly he has matured and realized what it means to be a son to his mother, a husband to his wife, a father to his children and a friend to the few true friends he has. I do not profess to have a crystal ball and be able to tell what the future holds but I am thoroughly convinced that neither this Court nor any other Court will ever have Mr. Cole before it again as a criminal defendant. I believe he has learned what is important in life and how the involvement of criminal activity in his life will only lead to disaster and is never the answer to the problems that life will throw at him. This lesson has been burned into his very soul so much so that I do not think he will waiver again.

The PSI determined Guideline range of life is extremely high and unreasonable in this matter. This Guideline range drastically overstates Mr. Cole's criminal history and most respectfully should not be followed by the Court. The Probation Department's determination that Mr. Cole is a career offender is based on the fact that when Mr. Cole was 18 years old he was arrested on a Robbery in Bronx County and then when he was 19 years old he was arrested on a second robbery in Bronx County. Most importantly however, Mr. Cole was adjudicated a Youthful Offender on his first robbery case. This is highly important because when Mr. Cole was so adjudicated and accepted the plea he was told both by his counsel and the Court that this conviction could never be used against him in a Court of law to increase his sentence, that in the

eyes of the law this conviction has never taken place. Now the Probation Department is doing exactly what the Court in Bronx County said would never happen, they are requesting that this Court greatly increase his sentence exposure due to this conviction. This is unconstitutional and violates the terms of his plea agreement with the Court in New York State Supreme Court, Bronx County. If this Court finds that Mr. Cole is a career offender due to this conviction I most respectfully request that the Court adjourn the sentencing in this matter and allow time for Mr. Cole to return to Bronx County and file a motion for the return of his plea because the promises made by both the Court and his counsel have not been upheld. This situation is quite similar to the situation in Padilla v. Kentucky, 559 U.S. 356 (2010) where the Supreme Court found that illegal immigrants must be allowed to withdraw their guilty pleas because they were not informed by the Court or counsel that their convictions could result in their future deportation. Thus, the Supreme Court of the United States found that this failure to disclose a pertinent consequence of their plea violated their right to knowing and intelligent waiver of their right to have a trial in their cases. Here, the violation is even more egregious because it goes beyond a failure to inform Mr. Cole of the consequences of his plea, here the consequences of his plea are in direct contrast to what he was informed of. He was told by the Court itself and counsel that this plea would not impact any further sentences against him and instead of that being true it is being used to vastly increase his sentence exposure. The Constitutional ramifications of this cannot be underestimated.

If the Probation Department honored the Court's promises to Mr. Cole on March 21, 2005 he would not be considered a Career Offender and would not be determined to be eligible for a life sentence under the Guidelines. Thus, it is most respectfully requested that this Court should not find Mr. Cole to be a Career Offender and that the 2005 Conviction for Robbery in Bronx County should not be used by this Court to determine his criminal history because he was designated a Youthful Offender by the Court and promised that the conviction could not be held against him.

Furthermore, if this Court denies the above application Mr. Cole respectfully argues that pursuant to U.S.S.G. §4A1.3(b)(1) a downward departure based on the fact that his criminal history substantially over-represents the seriousness of Mr. Cole's criminal history should be granted.

Mr. Cole's first arrest occurred in April of 2004 when he was just 17 years old for possession of a small amount of Marijuana over the next 18 months Mr. Cole was arrested one more time for Marijuana and three times for Robbery. Thus, in just 18 months during the time he was age 17 to 19 he acquired almost his entire criminal record, due to which he is facing a life sentence from this Court.

Case law clearly states that in such circumstances the Court is free to grant a downward departure. In United States v. Mishoe, 241 F.3d 214, 220 (2d Cir 2001) the Court outlined the reasoning behind the increased incarceration time for people who have longer criminal records when it stated:

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses. If, for example, a defendant twice served five or six years and thereafter committed another serious offense, a current sentence might not have an adequate deterrent effect unless it was substantial, perhaps fifteen or twenty years. Conversely, if a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect.

Here, the greatest sentence Mr. Cole has done and the only one that involved incarceration is four years of which he served approximately three years. Thus, a sentence of Life for the current case would be grossly beyond a reasonable sentence for deterrent reasons. Such a sentence would be in direct contrast to the reasoning of the Court in <u>Mishoe</u>.

The defendant most respectfully suggests that a sentence of 10 years (which his 2.5 times longer than any sentence he has previously served) would fulfill the mandate of this Court of sentencing Mr. Cole to a time period that takes into consideration punishment for his actions and the need for rehabilitation into consideration. The factors outlined in 18 USC § 3553 support a sentence in accordance with this respectful request. Mr. Cole realizes the seriousness of the offense that he became involved in and the destruction that crimes like this cause. Mr. Cole truly regrets his actions towards Ms. Adams and the ordeal he and others put her through. What Ms. Adams went through no person should be subjected to even if he or she decided to live with a drug dealer and reap the financial benefits of living with a drug dealer. Such a decision by Ms. Adams does not mean she can be treated like she was and Mr. Cole truly regrets what he personally did and that he allowed others to do what they did.

18 USC § 3553(2)(B) requires the Court to consider deterrence. In this case as Mr. Cole has stated in his letter to the Court and expressed to me he has decided to treat this case as a cross road in his life. Is he going to spend the rest of his life going in and out of jail and not be there for his wife and children or is he once and for all going to put a stop to his criminal conduct and be there for his wife and children and help support them through hard work and diligent effort. He realizes his wrong and knows this is his last chance to prove it to his family, the public and to the Court who stands in judgment of him. Mr. Cole wants nothing else but to return to his family, find a job and support his family. He knows that he will never return to illicit behavior to solve his problems again. It is fully recognized that this Court might be thinking why should I trust these statements by counsel and more importantly why should I trust Mr. Cole's statements that he is going to stop his involvement in crime and lead a life devoid of criminal conduct. After all he has probably told numerous judges this all before. The Court certainly would not be wrong for having these thoughts and they are well founded. However, the answer to those thoughts are that Mr. Cole is older now, he has more responsibility than he has ever had before and he knows this is his last chance. If this Court grants him the leniency he is respectfully asking for Mr. Cole knows full well his next arrest means he will probably be spending the rest of his life in jail. Which in turn means that his kids will not have a father and his family will be devastated.

Finally and most importantly for this Court to consider even if this Court grants him a sentence of 10 years Mr. Cole will be serving a very long prison sentence wherein everyday that he wakes up he will know that he is where he is due to the bad decisions he made and that the only way not arrive back in this predicament is when he is released is to live a law abiding life. Every time his daughters visit him he will know that it his fault that he is separated from them. Every milestone of life he misses of theirs for the next ten years he will know it is his fault. Such thought will serve to deter him from ever violating the law again.

From reading Mr. Cole's letter it is obvious that he understands now the wrong turns he has taken in life and what should be and now is important to him, his family and honest work to help support them, he knows he must not again try for the quick fix to any of the problems that life throws at him. Since, he has learned this lesson, there is no reason to believe that he will return to criminal conduct. Mr. Cole has certainly been affected by his arrest and never wants to go through this process again.

Mr. Cole will stand before this Court on January 30th a very scared and nervous man as this Court holds his entire future in its hand because he realizes the consequences of this Court's decision and he never wants to be in that position again. If this Court decides that a 10-year sentence is just and reasonable in this matter, Mr. Cole's reaction will most assuredly not be "oh I got away with one, I can do it again." To the contrary Mr. Cole's reaction will be overwhelming gratitude to this Court and that he never wants to be in the position of risking everything again. Mr. Cole most respectfully does not need a Life prison sentence to teach him a lesson. He has learnt the lesson already, time again. He began learning the lesson when his daughter was born while he was incarcerated. The lesson began to take further hold on him when he first met counsel who described to him his legal situation and the potential sentences he was facing due to his conduct. He continued to learn the lesson with everyday that he has spent in jail since that moment and missed watching his children grow. The lesson has been reinforced every time he is told by a jail officer what to do and when to do it. And, finally the lesson has been learnt as he has spent these last few weeks nervously awaiting the Court's pronouncement of his sentence. Mr. Cole has certainly been deterred from committing any crimes again already. That lesson has been entrenched in his mind never to be forgotten.

Above I have described the facts relative to specific deterrence and how this arrest and subsequent prosecution have seared into Mr. Cole's mind the quest to live a law-abiding life and to repay society for the harms he has caused. However, 3553 (a) requires a sentencing Court to consider not only specific deterrence but also general deterrence. Experts have conducted many studies and they have routinely found that there is **no** empirical relationship between sentence length and specific or general deterrence. In all categories of crime from white collar to drug offenses, from violent crimes to larcenies severe sentences have proven not to deter crime. The studies have shown however that lengthy sentences do increase the rate of recidivism. See, Lynne M. Vieraltis et. al., *The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002,* 6 Criminology & Pub. Pol'y 589, 591-93 (2007), U.S. Sent'g Comm'n Staff Discussion Paper, *Sentencing Options under the Guidelines* 18-19 (Nov.1996), available at http://www.ussc.gov/SIMPLE/sentopt.htm, Miles D. Harer, *Do Guideline Sentences for Low Risk Drug Traffickers Achieve Their Stated Purposes?*, 7 Fed. Sent. Rep 22 (1994).

Indeed, while many believe that the higher the sentence, the greater the effect in deterring others, the scientific research shows no relationship between sentence length and deterrence. The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one. But the question for this Court is "marginal deterrence," *i.e.*, whether any particular quantum of punishment results in increased deterrence and thus decreased crime. Here the findings are uniformly negative: there is no evidence that increases in sentence length reduces crime through deterrence. Current empirical research on general deterrence shows that while **certainty** of punishment has a deterrent effect, "increases in severity of punishments **do not** yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006)

The fact that "general deterrence" is not considered by people considering committing crimes is best demonstrated by the studies of white-collar crimes. For purposes of argument it can be rationally presumed that the white-collar criminal is the most rational of criminal offenders. That if any criminal offenders were going to consider all of the pluses and minuses of committing a criminal act, a white collar criminal would be most likely to indulge in that type of thinking. However, the studies show that there is no difference in the deterrence factor between probation and imprisonment for white-collar offenders. That is, offenders given terms of probation were no more or less likely to reoffend than those given prison sentences. See, David Weisburd et.al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995).

This has proven to be true even in narcotics cases. In a recent study of drug offenders sentenced in the District of Columbia, researchers tracked over a thousand offenders whose sentences varied substantially in terms of prison and probation time. Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, __ Criminology ___ (2009). The results showed that variations in prison and probation time "have no detectable effect on rates of re-arrest." "Those assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame." In other words, "at least among those facing drug-related charges, incarceration and supervision seem not to deter subsequent criminal behavior." Id.

The reason for this is that potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentence consequences in the manner one might expect of rational decision makers. Tonry, *Purposes and Functions of Sentencing, supra*, at 28-29. A recent review of this issue concluded: "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." Gary Kleck, et al, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

Honorable Katherine B. Forrest
January 24, 2014
Page 7 of 10

The Commission itself has found that "[t]here is no correlation between recidivism and guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The Guidelines' offense level is not intended or designed to predict recidivism." See USSC, Measuring Recidivism at http://www.ussc.gov/publicat/Recidivism_General.pdf. State law enforcement officials at the Commission's recent hearing confirmed the research results. Then Chief John Timoney of the Miami Police Department testified that the deterrent effect of the federal system is not its high sentences but the certainty that there will be punishment.

The Courts have also begun to take into consideration the lack of effect of "general deterrence". In United States v. BeierCole, 599 F. Supp. 2d 1087, 1103-04 (N.D. Iowa 2009) the Sentencing Court after reviewing empirical evidence regarding the continuing increase in the number of drug and child pornography offenders despite the war on each and stiff federal sentences, concluded that "there is not a sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet. . . . This does not mean that [the defendant] should not receive a lengthy sentence for his criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of." This Court in considering what sentence Mr. Cole should receive for his conduct must of course consider "general deterrence" but based on the above studies it is respectfully submitted that this Court should consider "specific deterrence" to a greater degree than "general deterrence".

18 USC § 3553(2)(C) requires the Court to consider the threat to the public from the defendant. As previously stated Mr. Cole is determined never to be involved in criminal conduct again. While it is true that many of Mr. Cole's arrests have been for crimes of violence they occurred while Mr. Cole was a much younger man and I believe in the sincerity of Mr. Cole's maturation over the time he has been incarcerated. I have seen it first hand and it is quite obvious even to the casual observer. Furthermore, Mr. Cole will be spending the next ten years if the Court sentences Mr. Cole along the lines of the defendant's respectful request it gives Mr. Cole a long time to take many rehabilitation courses and further realize the wrongfulness of his actions and how they can not be repeated.

The Court must also consider according to 18 USC § 3553(2)(C) and (D) what will best insure that the defendant will not commit further crimes and to provide the defendant with needed programs. In this instance I believe Mr. Cole can benefit from many of the programs offered by the Bureau of Prisons during his incarceration and the Probation Department upon his release from jail and the Court should certainly recommend to both that they place Mr. Cole in any vocational and drug programs that they feel would benefit Mr. Cole. Mr. Cole is certainly willing to partake in any programs that would aid him in his quest to gain employment and help him live a law-abiding life. Mr. Cole has already started doing this. He has taken two vocational programs already.

In United States v. Howe, 543 F.3d 128 (3d Cir. 2008) the Court found that a defendant's post conviction remorse is an adequate reason for a Sentencing Court to grant a defendant a below Guidelines sentence. The Court further noted that the remorse need not be "exceptional". Howe was a white-collar case but I think any defendant can feel remorse for his actions. Here, I think the record is clear that Mr. Cole feels extraordinary remorse for his actions. This is evident to me in my conversations I have had with Mr. Cole and his 180-degree change in his attitude and most respectfully is evident to the Court by the letter he has written to the Court. His letter to the Court demonstrates his heartfelt remorse for his actions. Thus, Mr. Cole's remorse is another factor this Court should consider in deciding whether to grant Mr. Cole the requested Guideline sentence.

The Probation Department's recommendation of a Life sentence is devoid of any reason except for the defendant's criminal history. The PSR does not offer any explanation why the myriad of programs offered by the Bureau of Prisons would not be able to rehabilitate Mr. Cole to the point that he would be able to be released into the general public. The PSR offers no explanation of what would be accomplished by a lifetime sentence. The PSR does not even mention the fact that a vast majority of Mr. Cole's criminal history occurred when he was 19 years old or younger. The PSR totally ignores the fact that Mr. Cole has a strong family roots and that members of his family have said they will be more diligent in keeping tight reins on Mr. Cole if and when he is released from jail. The PSR merely reduces a Life sentence to a mathematical determination. This is improper in this day and age. Most respectfully a Sentencing Judge should consider every convicted person as an individual and every case as a unique study in the human condition. As articulated by the district court in United States v. Coughlin, No.6 Cr. 20005, 2008 WL 313099 (W.D. Ark Feb.1, 2008) on remand after the Supreme Court's decision in Gall: " [B]ased on the unique facts of a particular case, austere adherence to the averages and generalities of the Guidelines can be unjust and contrary to reason.... No chart of numbers will ever fully contemplate, quantify and cipher the endless variations of the human experience. While it might provide a normalizing force in sentencing, we cannot, with a system of points and categories, reduce justice to a universal formula." The Probation Department by merely calculating Mr. Cole's sentence by using a mathematical formula without any reasoning for its decision did exactly what the Court in Coughlin said should not be done.

Here, the Probation Department's calculation that Mr. Cole is a career offender and recommending that he be sentenced to life s means that under the Probation Department's logic Mr. Cole who got arrested five times over an 18 month period from the time he was 17 years old until he was 19 is to be treated the same as a person who gets arrested and sentenced on one crime, then gets out of jail and after a certain time period gets arrested again and receives a higher sentence then the last time and then gets out of jail and again after a certain period of time gets arrested again and receives a sentence higher then the last one and then gets out and gets arrested again. In this day and age is it really fair and just to arrive at a sentence of Life for a young man who obviously made some horrible decisions as a youth and a young man by merely following a mathematical equation. Due to the Guidelines is it truly just to sentence a man still in his twenties the same as a person who as an adult gets arrested three times over a long time period and each time he was sentenced he received a sentence higher then the last yet still persisted on committing crimes well into his adult life. Obviously the answer is no. These two

examples cannot be treated the same and still be considered fair and just and within the overriding goal of sentencing which is to give the lowest sentence that is reasonable to reach the goals of sentencing. Yet, this is exactly what the Probation Department is recommending that this Court do. Here, a mere mathematical calculation is not just or reasonable.

The object of this letter and all the attached letters, is to give this Court some insight into how and why Mr. Cole finds himself before your Honor awaiting the pronouncement of sentence and what sentence given the varied sentencing options the Court has at its disposal best accomplishes the goals of a Sentencing Court. It is the defendant's position that after considering all of the relevant factors of Mr. Cole's situation, the law as it is today and the empirical studies done in this area that a 10 year sentence would be reasonable herein and would satisfy the Court's mandate to "to impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in Kimbrough v. United States, 128 S.Ct 558, 571, 169 L.Ed 481 (2007). This phrase is euphemistically referred to as the "parsimony clause," it is in reality a manner of codifying the constitutional doctrine of the least restrictive alternative. "Parsimony in the use of punishment is favored. The sentence imposed should therefore be the least severe sanction necessary to achieve the purposes for which it is imposed ..." See, American Bar Association, Standards For Criminal Justice, Chapter 18, "Sentencing Alternatives and Procedures", 18-3.2(a)(iii) (1993). Thus, it is most respectfully suggested that the suggested sentence of 10 years is severe enough in this instance to promote respect for the law, punishment and rehabilitation.

It is the defendant's position that the Probation Department's recommendation of Life fails to take into consideration the individual characteristics of Mr. Cole and his case, the law as it currently stands and the empirical studies that have been conducted in this area and merely rested on a mathematical calculation and a strict adherence to a Guideline. As the Supreme Court explained in Gall v. United States, 128 S.Ct. 586, 596, 169 L.Ed 445 (2007), "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553 (a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Here, the Probation Department just used a strict adherence to a Guideline rule in order to unjustly severely increase Mr. Cole's sentencing exposure without considering any other factors. When one considers all of the factors present in this case it is the defendant's position most respectfully that a sentence of 10 years is justified. This sentence would meet the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in Kimbrough v. United States, 128 S.Ct 558, 571, 169 L.Ed 481 (2007).

Thank you very much for your consideration of this matter.

Respectfully,

David Touger

cc.: Parvin Moyne, AUSA
     Timothy Sini, AUSA
     Emily P. Frankelis, US Probation Officer

TRULINCS 67573054 - COLE, TREVOR - Unit: BRO-J-B

---

FROM: 67573054
TO: Touger, David
SUBJECT:
DATE: 01/24/2014 10:16:46 AM

Dear Judge Forrest,
　　　　　How are you doing today?.Thank you for taking your time out to read this letter.
The crime that i participated in , i don't blame no one but my self. I take full responsibility for my actions.
Miss Adams did not deserve to be held against her will for my instant gratification for weed and money.
The fact that i held some one against there will , will haunt me for the rest of my life.
I was raised by my mother and sisters, and to think something like this could of happen top them put me in a state of disgust and shame.Im not that monster the paper work depict me out to be.
No matter what i was going through physically or emotionally did not give me the right to commit this crime.
My mother did not raise me that way. She did not bring me from Jamaica to the united states to commit crime and to be a stististc.My pour decision making and lack of will power to say no towards negative things always set me back.
I brought shame to my families names by going in and out of jail. Being in the united states is a privilege and a oppertunity.My family worked very hard to make sure i had a better life than they did. I disrespected there hard work by not doing the right things that I'm suppose to do. I let every one down that knows my full potential and good heart.
I especially let down my three daughters. They wasn't ask if they wonted to be in this world, and by me being in jail and cant take care of there basic needs don't help one bit. I hope they forgive me one day for leaving them out there with out giving them the Guidant's a father is suppose nurture there child with. The life i was living is not the way wont wont to live the one life that God gave me. I know right from wrong and what i did was the wrong thing to do. I deserve to be punished for my actions. I hope one day that every one that was effected by my actions will find forgiveness in there hear to for give me.
I don't wont to.live like this anymore. I will not live like this anymore. The only person i would be lying to is my self and I'm tired of lying to my self. I have to start loving my self and treat every one with the same respect that i would like to be treated with.
The time that i will receive for this crime i will not put to waste. I will enlist in all programs that the jajl have to offer. Take as much trade classes and lean as much new things i possibly can. I will also rehabilitate my train of thinking, read more influantraul books. Put my energy towards positive thinking. Surround my self with the guys that's really trying to change for the better. Work hard and focusing on putting life on the path that's good for my children and I.
I have grown and still growing from this expireance.I would like to apologize to courts and i apologize to every one that was hurt by my wrong doing, expetionaly my kids.  Than you

　　　　　　　　　　　　　　　Sincerely yours
　　　　　　　　　　　　　　　Trevor Cole

E. Diana Cassells | 3450 Gates Place, 6C, Bronx, NY 10467 | 718.798.9356 | diana.cassells@gmail.com

December 20, 2013

Hon. Justice Katherine Forrest
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

Re: Letter regarding Trevor Cole

Dear Your Honor:

    My name is Diana Cassells, and I am writing to you in my capacity as the aunt of the defendant Trevor Cole.

    The young man you are about to sentence is a young man who once had great promise, a promise that has been blighted by some of the actions he has taken in the course of his life. As the youngest nephew, the family harbored the hope that with Trevor migrating to the United States at a young age and having the benefit of a sound education, he would take his place as a valuable and productive member of society. His sisters all attended college and are now successful at their respective professions, his brothers likewise are gifted tradesmen and business owners, a testament to the hard work of a single mother who toiled night and day to raise her children.

    Trevor remains a special case. The happy child with the bright smile; the helpful and friendly church going youngster, made some unfortunate life choices, the end result of which is contained in the file that you are deliberating on. I cannot make any excuses for his actions, because his record speaks for itself. However there are three outstanding reasons why I am appealing to you to take into consideration while you decide Trevor's fate. The reasons are his three daughters Aleona (7 years); Madison (3 years) and Baby Malahn (7 months). These children stand to become victims of the consequences of their father's actions. His absence will cause grave economic hardship for these girls.

    In my line of work (I teach at a CUNY College), I come across many students who are engaged in programs of rehabilitation after serving their debt to society. I pray that the sentence that you discharge on Trevor will be one that returns him to society at an age where he can assume his role of father, remake his life and take his place as a valuable member of society. I thank you for your cooperation on this matter.

Respectfully submitted,

*[signature]*
E. Diana Cassells

1/13/2014

To: The Honorable Judge Forrest,

My Name is Alecia Jones-Kerr; an older sister to Trevor Cole. I am currently a Social Worker in the state of Florida. I am a law abiding citizen and respect the law to the fullest extent. I believe in our judicial system and have faith that it will stand true to the values of our forefathers.

I am writing on behalf of, my brother, Trevor Cole. I respectfully request and plead for leniency in his sentencing. My brother, Trevor Cole, is generally a law abiding person who deeply regrets the mistakes and decisions he has made. He is a loving, caring and respectful individuals to persons both known and unknown.

My brother and I spent our childhood years together. During this time he has portrayed himself as a caring and thoughtful individual. I cannot remember a time where we did not get along or where he disrespected me in anyway. He is always there when you need someone to listen or just a shoulder to cry on. It is clearly obvious that my brother, Trevor Cole, has made some poor choices in his life but, he now realize that he has acted immaturely with making positive decisions about his future.

Trevor Cole has three young girls. These children depend upon their father, for mental, emotional and financial support. He has a positive bond with all of his children, in spite of his unfortunate incarceration. My brother enjoys interacting with his children and reading them stories. He is normally there when they are in need. These are just some of the qualities Trevor Cole possesses.

My brother has a very strong support system and a well extended family and loving family. We will all assist Trevor in obtaining a job and making better choices that will enhance not only his way of life, or the lives of his children but, also the community at large.

I would be most appreciative if you would consider leniency for my brother, Trevor Cole.

Respectfully,

Alecia Jones-Kerr

January 14, 2014

Hon. Justice Katherine Forrest
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312


Dear Justice Forrest:

My name is Kathy Dockery and I am a close friend to Ms. Vinel Cassells and the Cassells family. This is an immigrant, single-parent household with 9 children. In my years of dealing with the family, the kids were raised in a house of much love and encouraged by their mother to be ambitious and productive citizens. I watched this family grow together, with a parent that provided a nourishing and supportive environment, despite her hectic work schedule. The baby of the family, Young Trevor was a well-mannered child, good to his siblings and attentive with his studies up until the age of high school. It has been said that "you make your children, but you don't make their minds". True is this fact for Ms. Cassells, for somewhere along the way, young Trevor got lost and made mistakes that have brought him to where we are today.

Trevor now has three young daughters of his own, who he is unable to help in raising because of his current circumstance. The mother of the children is also dealing with health issues that may hamper her ability to care for the girls. Kids need their parents and the reality is that these girls are in jeopardy of losing both parents, through circumstances beyond their control. It is especially with the girls in mind that I write this letter of appeal.

Trevor has realized the toll his incarceration has taken on his mother, his siblings and his own household. He has a close bond with his daughters and is committed to 'doing right' by them, if given the chance.

We live in a democratic, civilized society, where we know that we must be punished for crimes we commit. Trevor and his family understand this. However, we also know that society provides enough resources to assist in rehabilitation if we so choose it. Trevor is ready for change. With the support of friends like myself and his family, Trevor, if given the opportunity, can be a productive citizen after all.

Please consider these factors as you decide his fate.

Sincerely,

*Kathy Dockery*
Kathy Dockery

Vinel Cassells
30 Cottage Avenue, Apt 1G
Mt. Vernon, NY 10550

January 1, 2014

Hon. Justice Katherine Forrest
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

                        Re: Sentencing Letter for Trevor Cole

Dear Justice Forrest:

Your honor, the first thing I want to do, is to apologize to you that my son is standing in front of you today. I am deeply embarrassed and frustrated to be writing you this letter today. My son Trevor Cole has caused me more heartache, pain and sorrow than any mother should have to bear I migrated to this great country with my 9 kids, seeking opportunities that were not available to them in the place they were born.

When I arrived in this country, during the initial years, as a single mother I worked 12 hours per day, 7 days a week. In my quest to feed my children, maintain a roof over their head I failed to find a balance between work life and home life and as a result Trevor my last child fell through the cracks. This however does not absolve him from the responsibility of his actions.

Your honor, in my house, the son I raised was kind, pleasant, well mannered, loving and studious. Around the neighborhoods we lived when he growing up he was known to be helpful to seniors, would shovel snow for them and help them to carry their bags. Outside of my home from the time he entered junior high school

1

he began a downward spiral that has culminated in the actions for which he is currently charged.

As a person who works in the New York City corrections system, and a mother who believes that people should be punished for their wrongdoings, I would be a liar if I tried to deny that my son has not been a model citizen. Nevertheless I can tell you that the defendant that stands in front of you is different from the one I have raised and that has had consequences for many people.

Your honor today I write to you on behalf of every member of my family. My parents, Trevor's aunts, his siblings, and his three daughters have been greatly affected because of his actions and multiple incarcerations. This however pales when I consider the impact that Trevor has had on his victims and I again apologize for my failings as a parent. My only hope at this time is that he will use his time while incarcerated in a productive manner and that when he is released he can become be successfully reincorporated as an industrious member of society. I thank you for your kind attention to this matter.

Yours sincerely,

*[signature]*
Vinel Cassells

January 17, 2014
30 Cottage Avenue
Mount Vernon, NY 10550

Dear Judge Forest,

My name is Stephanie Jones I am 37 years old, a single a parent and the proud mother of a 16 years old Brianna Morris who is a straight A student at the academy of Mount Saint Ursula High School in The Bronx. I myself is a certified nursing assistant and current nursing student at Westchester Community college. I am Trevor's oldest sister by my mother's side. I am in deep distressed that my brother is in this predicament. Growing up in Jamaica was challenging for us.  My mom is single Parent with 9 children. With the help of my grandparents, my mother and all 9 children were able migrated to the US for a better opportunity. My mother did an outstanding Job as a single parents raising us, she is such a strong and hardworking individual.

  Growing up with Trevor was amazing he was and still is the best little brother ever. I remember babysitting him and pretending he was my baby, and I now live to see him returned the favor on countless times by babysitting my daughter whenever I had to work.  Trevor is so caring, loving and very family orientated. He is very protective of his family especially his mother and sisters. I am about 10 years older than Trevor and he have taught me a lot he always told me to keep my head up and to make certain that my daughter Brianna stay out of trouble.

My brother Trevor has three beautiful daughters they are my pride and joy. I love my nieces like my own daughter. Whenever I think about the possibility of them growing up without a father it pains my heart.  Every little girl needs a father in their life. I was never bless with being raise by both parents and that created a void in my heart. I also see how much it has impacted my daughter by not growing up with her father. I really don't want to see my little nieces going through the same thing.

I want to apologize on behalf of myself and my family for the circumstances my brother has gotten himself into.  I am deeply asking for leniency in regards to his sentencing. We all makes mistakes and yes I believe in whenever we do something wrong we must pay but we also deserve a second chance to correct and make better choices.

I thank you sincerely for taking the time out to listen to or this letter I really appreciate it.


Sincerely yours,
Stephanie Jones

January 21, 2014
    Hon. Justice Katherine Forest
    United States District Court
    Southern District of New York
    500 Pearl Street
    New York, NY 10007-1312

    Dear Justice Forest,

    My name is Brianna Tiffanie Morris, niece of inmate Trevor Cole. It has come to my great knowledge that my deeply loved uncle may be facing a profusion of jail time. This greatly dismantles my heart and soul. Ever since I was born on the day of August 29, 1997, my uncle Deron has always been there for me with much guidance and support. He was always there to protect and help me persevere through difficult circumstances in life. Growing up, my mother was a single parent who always worked long and hard hours to provide shelter, stability, and comfort to my life. During those times, my uncle would babysit and help my mom take care of me.

    Trevor Cole was more than just an uncle to me. He was my favorite uncle, the big brother I always wanted, and the father I never really had. His knowledge has played a sufficient role in my life being that he would always help me with any homework, and would always cook whatever I wanted or needed. There were times in my life when I felt very depressed and sad, and he was there to push me forward and persevere throughout life. My uncle was always been there for me; he was sort of a representation of my conscience. Uncle Deron always stressed the importance of right and wrong, and making good or bad choices. He would always tell me to never be like him, and always strive for the best and highest.

    My future profession is being a doctor, and my uncle always encouraged me in pursuing that career. He was always there for me through thick and thin, in comparison to how my grandmother is towards him. My grandmother originated from Jamaica, and wanted a better life for her children. The United States had better opportunities, and could provide for a big family in many ways. My grandmother is a very hard working woman, and always wanted the best for her kids. Trevor was her baby, and she always took care of him, and showed him an abundance of love.

    I am truly sorry that my uncle is present before you today. I know what he has done has been terribly wrong and unjust. Everyone makes mistakes, but I also know it is up to the court of law to deeply punish a person for committing such acts. My prayers are truly with my uncle, and also the jury that stand before him today. Everyone is entitled to make mistakes because God in fact did give us free will. However, it is our choice to choose what best accompanies us, and how we may feel.

To whom this may concern,

I Ebony S. Santos, the mother of Trevor Cole's children: Maddison A. Santos-Cole age 3 1/2 and Malahn A. Santos-Cole age 8 months. am sincerly asking that Trevor's sentencing is greatly considered so that he may have the chance to see his daughters grow. Also so that he may become a positive male influence in their lives. I do understand that he has a past but please consider his future. His children need him in their lives. I need him in their lives. I have recently been diagnosed with Ovarian Cancer and am battleing everyday. I just want our girls to know that if any thing ever happened to me they would not be missing out on both of their parents. When Trevor was not incarserated he was an excellent fathe to his oldest Maddison. Unfortenatley his youngest Malahn has only seen him twice in her 8 months. I am humbely and sincerly begging you to please consider Trevor and his family when sentencing him. I am a firm believer that no crime should go unpunished but I do also believe that Trevor has and is still learning from his mistakes. Once again please consider Trevor and his family. Thank you Sincerly Maddison, Malahn, & Ebony Santos.

30 Cottage Ave
Mt Vernon, NY

To Whom it May Concern,

My name is Charles Brazier. I have known this family for over twenty (20) years now. Your honour I am writing you today about this young man Trevor Cole who is standing in your presence today. This young man had a bright future he was always that he would like to be an Electrician when he grew up, like to help the elderly and do thing for people, like shoveling snow and stuff. What went wrong I do not know but he get caught up in the wrong stuff. However in sentencing him your honour I do hope it will be a learning lesson to him and while there he would educate himself so when he gets out he will of good service to society and also himself.

Submitted Respectfully
Charles Brazier