UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

        -v.-                              :

                                          12 Cr. 802 (KBF)

TREVOR COLE and                       :
DOMINIQUE JEAN PHILLIPPE,

                            :

            Defendants.

                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA


PREET BHARARA
*United States Attorney*
*Southern District of New York*
*Attorney for the United States*
*of America*


PARVIN MOYNE
TIMOTHY SINI
Assistant United States Attorneys,
*Of Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

        -v.-          :

                              12 Cr. 802 (KBF)

TREVOR COLE and          :
DOMINIQUE JEAN PHILLIPPE,

                :

         Defendants.

                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

### I. PRELIMINARY STATEMENT

The United States of America, through its attorney Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this sentencing memorandum in advance of the sentencings of defendants Trevor Cole and Dominique Phillippe, which are scheduled for January 30, 2014.  The Government respectfully requests that the Court sentence the defendants to life terms of imprisonment, which sentences would be within the advisory range of the United States Sentencing Guidelines ("U.S.S.G.").[1]

---

[1] The Government agrees with the recommendation of the United States Probation Department to sentence the defendants to 20 years' imprisonment for Counts One and Two, life for Counts Three and Four, and the mandatory seven years of imprisonment that must be consecutive for Count Five, for a total of life imprisonment plus seven years. However, for shorthand, the Government refers in this submission simply to a life term of imprisonment.

## II. BACKGROUND

**A.      The Offense Conduct**

Over the course of Labor Day weekend in 2012, two victims, a woman and her then-boyfriend, lived through an unspeakable nightmare - they were robbed, kidnapped, and tortured. The people primarily responsible for these atrocities are Trevor Cole and Dominique Jean Phillippe.[2]

On September 2, 2012, at approximately 10:30 p.m., Cole and Jean Phillippe stood in the stairwell of the fifth floor of an apartment building on Magenta Avenue in the Bronx, New York (the "Magenta Avenue Apartment," or the "Apartment"), waiting for the female who lived there to return.  (Jean Phillippe PSR ¶ 15; Cole PSR ¶ 15).  Cole and Jean Phillippe had heard from a co-conspirator, a woman named Lisa Hylton, that the female ("the Female Victim") was the girlfriend of a marijuana dealer (the "Male Victim"), and Cole and Jean Phillippe believed she had money and marijuana in the Magenta Avenue Apartment, which they intended to steal.  (*Id.*).  When the Female Victim returned home after an evening playing Bingo, she was accosted by Cole and Jean Phillippe, who threatened her with firearms and pushed her into the Apartment.  (*Id.;* 1/15/14 Tr. 13-14).  Cole and Jean Phillippe demanded the drugs and money; when she replied that there was neither drugs nor money in the Apartment, they threw her on the ground and ransacked the Apartment.  (1/15/14 Tr. 19).  Finding nothing, they then tried to force the Female Victim to call her boyfriend, the Male Victim.  (Jean Phillippe PSR ¶ 16; Cole PSR ¶ 16).   The Female Victim

---

[2] The details of these events have been described at length in (1) the Pre-Sentence Investigation Reports for Trevor Cole (dated January 23, 2014) and Dominique Jean Phillippe (dated January 23, 2014)  (the "Cole PSR" and "Jean Phillippe PSR," respectively); (2) the evidentiary hearing conducted by the Court on January 15, 2014; and (3) the Court's January 27, 2014 Order, in which the Court set forth its factual findings.  The Government relies upon each of these sources in summarizing the central events.

first tried to stall the robbers by calling the Male Victim's old phone number (which no one answered). (*Id.*).

Cole and Jean Phillippe became impatient with the Female Victim. They tied the Female Victim's arms and legs up with duct tape, they taped her eyes closed with the duct tape, and they taped her mouth shut. They left her like that – blind, gagged, bound, for hours on the floor of her bedroom. (Jean Phillippe PSR ¶ 16-17; Cole PSR ¶ 16-17).

During the time when the Female Victim was left on her bedroom floor, she could not see anything because her eyes were taped shut. But she could hear that more people arrived to wait with Cole and Jean Phillippe – co-conspirators who helped Cole and Jean Phillippe watch the Female Victim and who waited for the Male Victim to come. (Jean Phillippe PSR ¶ 17; Cole PSR ¶ 17; 1/15/14 Tr. 22-23, 26, 39).[3] Cole, Jean Phillippe, and their accomplices cooked, smoked cigarettes and marijuana, and watched television in the Apartment, even billing approximately $170 of pornography to the Female Victim's cable television bill. (1/15/14 Tr. 39). And while they waited, the robbers assaulted the Female Victim. At one point, while the Female Victim was still blindfolded and bound, several robbers raped her and, after their brutal attack, one of the robbers then urinated on her. (Jean Phillippe PSR ¶ 16; Cole PSR ¶ 16; 1/15/14 Tr. 27-29).

After a whole day passed, on Monday evening, Labor Day, Cole and Jean Phillippe moved the Female Victim from the bedroom floor into her bathroom and put her in a bathtub. (1/15/14 Tr. 29). They kept her tied up and they continued to beat her. (*Id.*). And while the Female Victim sat in the bathtub – with her eyes and mouth taped shut and her body covered in urine – Trevor Cole had sex in the Female Victim's bedroom with Lisa Hylton, the woman who had told Cole and

---

[3] Among the co-conspirators who arrived was Gregory Accilien, Dominique Jean Phillippe's brother. Cole and Jean Phillippe called Accilien and asked that he bring them duct tape to bind the Female Victim. *See* Accilien Stipulation.

Jean Phillippe about the Magenta Avenue Apartment.  (Jean Phillippe PSR ¶ 17; Cole PSR ¶ 17; 1/15/14 Tr. 30).

At some point during this horrible ordeal, the Female Victim broke down and called the Male Victim's real cellphone number.  (1/15/14 Tr. 24).  He agreed to come, but he did not arrive until Tuesday afternoon.  (1/15/14 Tr. 31).  When the Male Victim entered the Magenta Avenue Apartment, the robbers beat him, stabbed him, hit him with a gun, bound his arms and legs, and covered his eyes.  (Jean Phillippe PSR ¶ 18; Cole PSR ¶ 18).  The robbers forced the Male Victim to give them the keys to his apartment on Neill Avenue in the Bronx (the "Neill Avenue Apartment").  (*Id*.).  Cole and Jean Phillippe left the Magenta Avenue Apartment to search the Neill Avenue Apartment, while at least one co-conspirator was left with the Female and Male Victims.  (*Id*.)  Cole and Jean Phillippe stole from the Neill Avenue Apartment approximately six pounds of marijuana, $40,000 in cash, jewelry, clothing, and luggage.  (Jean Phillippe PSR ¶ 19; Cole PSR ¶ 19).  One of the co-conspirators who was left at the Magenta Avenue Apartment struck the Male Victim multiple times with a firearm, and struck the Female Victim in her head.  (1/15/14 Tr. 33, 106).

Approximately one hour later, Cole and Jean Phillippe returned to the Magenta Avenue Apartment.  They were unsatisfied with what they had obtained from the Neill Avenue Apartment, and demanded that the Male Victim call someone to deliver $250,000.  The Male Victim stalled, pretending to call people to get the money, and finally the robbers gave up.  (Jean Phillippe PSR ¶ 18; Cole PSR ¶ 18).

Cole, Jean Phillippe, and at least one co-conspirator attempted to clean the Apartment, throwing bleach on the victims and furniture.  (1/15/14 Tr. 34, 112).  The robbers then took the

Female Victim's car keys and drove away in her car. (Jean Phillippe PSR ¶ 19; Cole PSR ¶ 19). About 30 minutes later, the Female Victim managed to free herself from the tape and unbind the Male Victim. (Jean Phillippe PSR ¶ 18; Cole PSR ¶ 18). They called members of the Female Victim's family, who called the police. (*Id.*). The Male and Female Victims were brought to the hospital, where they were treated for injuries and released. (1/15/14 Tr. 37).

The New York City Police Department ("NYPD") and the Federal Bureau of Investigation ("FBI") opened a joint investigation of these atrocious crimes. In October 2012, the NYPD received a tip that Trevor Cole and Dominique Jean Phillippe had participated in the robbery and kidnapping of the Female and Male Victims, and that Cole had traveled to Maryland in late September to sell his share of the marijuana. (1/15/14 Tr. 3).[4] Law enforcement officers obtained Cole's cellular phone (which had been turned into NYPD custody after Cole was arrested for a domestic violence dispute), searched Cole's phone, and found photographs of Cole with various of the stolen items (including marijuana, the Male Victim's necklace, and the Male Victim's belt buckle). The cellular phone also contained photographs of Cole with his young daughter in Maryland during his trip to sell the stolen marijuana.

In late October and early November 2012, Cole and Jean Phillippe were arrested. At the time of his arrest, law enforcement officers executed a search warrant for Jean Phillippe's apartment in Mount Vernon, New York, and seized approximately 18 grams of crack cocaine (packaged for distribution), approximately 414 grams of marijuana, and pills containing methylone (a Schedule I controlled substance). (Jean Phillippe PSR ¶ 22). The drugs and drug paraphernalia

---

[4] Monique Stokes, Trevor Cole's former girlfriend, testified that Cole traveled to Maryland to sell the marijuana he stole from the Male Victim. (3508C at 14). Government Exhibit 500ccc is a photograph of a school in Maryland and was taken from Trevor Cole's cellphone on September 24, 2012. Government Exhibits 500ddd and 500eee are photographs of Trevor Cole's daughter and were taken from Trevor Cole's cellphone on September 24, 2012, at approximately the same time as the photograph of the Maryland school.

were scattered all over Jean Phillippe's bedroom, next to items that were presumably for his baby (such as baby formula).

**B.      Procedural History**

On October 23, 2012, a Grand Jury sitting in the Southern District of New York returned Indictment 12 Cr. 802 (KBF), charging Trevor Cole and Dominique Jean Phillippe in five counts.[5] Specifically, the Indictment charged the three defendants with:  (1) conspiring to rob individuals believed to be in possession of drugs and drug proceeds, in violation of Title 18, United States Code, Section 1951; (2) robbing individuals believed to be in possession of drugs and drug proceeds, in violation of Title 18, United States Code, Sections 1951 and 2; (3) conspiring to kidnap, in violation of Title 18, United States Code, Section 1201; (4) kidnapping, in violation of Title 18, United States Code, Sections 1201 and 2; and (5) using and brandishing a firearm during the charged robbery and kidnapping, in violation of Title 18, United States Code, Sections 924(c) and 2.

On October 31, 2012, Trevor Cole was arrested, presented in White Plains, and remanded pending trial.   On November 2, 2012, Jean Phillippe was arrested, presented in White Plains, and remanded pending trial.  (Cole and Jean Phillippe were arrested during Hurricane Sandy, and so their presentments were handed in the White Plains courthouse.)

On September 9, 2013, the morning that trial was scheduled to commence, Cole and Jean Phillippe pled guilty to all counts of the Indictment.  Notably, at the time of their guilty pleas, Cole and Jean Phillipe had received the Government's trial exhibits, witness list, and witness statements

---

[5] Indictment 12 Cr. 802 (KBF) also charged a third defendant, Jeremy Acevedo, but charges against Acevedo were dismissed on May 2, 2013.  On October 8, 2013, Superseding Indictment S1 12 Cr. 802 (KBF) was filed against David Delva.  Delva's case is pending.

(including material produced pursuant to 18 U.S.C. § 3500), and accordingly, they had the names of the victims and cooperating witnesses who would testify against them.

Prior to their guilty pleas, the Government provided the defendants with its understanding of how the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") applied to their case. For both defendants, the Government concluded that the offense level for Counts One through four (the robbery and kidnapping counts) was 44, which included a base offense level of 32, a 6-point enhancement because a ransom demand was made, a 2-point enhancement because the victims sustained serious bodily injury, a 6-point enhancement because the Female Victim was sexually assaulted, and a 2-point deduction for acceptance of responsibility. The Government calculated that Trevor Cole was a career offender, placing him in criminal history category VI, and that Dominique Jean Phillippe had six criminal history points, placing him in criminal history category III.

On January 15, 2014, the Court held a hearing to address two objections by Cole and Jean Phillippe to their PSRs – the assertion that the female victim had been sexually assaulted (warranting a six-point enhancement to the calculation of the Guidelines range for the kidnapping offenses) and the assertion that a ransom demand had been made (likewise warranting a six-point enhancement to the calculation of the Guidelines range for the kidnapping offenses). At the hearing, the Government called two witnesses – the Female Victim and the Male Victim – who testified about the horrendous ordeal they survived. Subsequent to the hearing, the Government also submitted an Affidavit from Special Agent John Reynolds of the FBI, in which Special Agent Reynolds described a conversation he had with Trevor Cole's former girlfriend and how she had heard about the sexual assault on the Female Victim. The defendants did not submit any evidence.

By order dated January 21, 2014, and in a subsequent opinion filed on January 27, 2014, the Court found that both the enhancement for sexual assault and the enhancement for ransom applied.

On January 23, 2014, the United States Probation Department issued the PSRs for Trevor Cole and Dominique Jean Phillippe.  With respect to their offense level, the Probation Department agreed with the enhancements for the robbery and kidnapping counts, but also included a one-point enhancement pursuant to U.S.S.G. § 3D1.4 because the defendants were convicted of multiple counts, for an offense level of 45.  However, pursuant to Chapter 5, Part A (which provides that, for "those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43"), the total offense level was adjusted to 43.  (Jean Phillippe PSR ¶ 33-56).

With respect to Trevor Cole, the Probation Department also found that Cole was a career offender because of his two prior felony robbery convictions.   (Indeed, the Probation Department noted that Trevor Cole actually has three prior felony robbery convictions – he was arrested in July 22, 2004 for a robbery committed prior to that date, and he was arrested for robberies committed on October 5, 2006 and October 6, 2006, which for Guidelines purposes are treated as related.)

With respect to Dominique Jean Phillippe, the Probation Department found that Jean Phillippe has 12 criminal history points (not six, as described in the Government's *Pimentel* letter).  The additional criminal history points were due to the following:  (1) Jean Phillippe's August 16, 2006 conviction in Westchester County Court for grand larceny in the 4th degree provided for two criminal history points (not one, as in the *Pimentel*) because, although Jean Phillippe initially received a term of probation, his probation was revoked and he was resentenced to a term of ten months' imprisonment; (2) Jean Phillippe's January 16, 2007 conviction in Bronx County Supreme

Court for criminal possession of marijuana provides for two criminal history points (not one, as in the *Pimentel*) because Jean Phillippe was sentenced to six months' imprisonment; (3) Jean Phillippe's January 30, 2007 conviction in Bronx County Supreme Court for criminal sale of marijuana results in one criminal history point (not none, as in the *Pimentel*); (4) Jean Phillippe's January 16, 2007 conviction in Bronx County Supreme Court for criminal sale of marijuana results in two criminal history point (not none, as in the *Pimentel*); (5) Jean Phillippe's March 2, 2009 conviction in Bronx County Supreme Court for criminal possession of marijuana in the fifth degree results in one criminal history point (not none, as in the *Pimentel*).  Accordingly, the Probation Department concluded that Jean Phillippe was in Criminal History Category V.

On January 24, 2014, Cole's counsel submitted a sentencing letter, which included a letter from Trevor Cole and some of Cole's friends and family members.  Cole's attorney argues that Cole should not be treated as a career offender under the Guidelines calculation, and that in any event, Cole should receive a sentence of ten years' imprisonment (far below the Guidelines calculation if Cole had no criminal history).

On January 27, 2014, Jean Phillippe's counsel submitted a sentencing letter, which included a letter from Dominique Jean Phillippe and some of his family members and friends. Jean Phillippe's counsel argues that Probation inaccurately computed Jean Phillippe's criminal history, and that he should have six criminal history points and be in Criminal History Category III.  Jean Phillippe's counsel further argues that he be sentenced to 188 – 235 months' imprisonment, which is a Guidelines range for a Level III offender at offense level 34 – (which would be even lower than the offense level applicable if the Court removed the two enhancements for the sexual assault and the ransom demand).

## III. DISCUSSION

### A.    The Governing Legal Framework

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

-10-

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* v. *United States*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita* v. *United States*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

**B.      The Court Should Adopt the PSRs' Calculations of the Guidelines.**

The Government concurs with the Guidelines calculations in the Presentence Investigation Reports for Trevor Cole and Dominique Jean Phillippe.  As noted above, the appropriate Total Offense Level for both defendants is 45 (which, pursuant to Chapter 5 of the Guidelines) is treated as a level 43.  The Government's *Pimentel* letter neglected to include the extra point to account for the fact that the defendants were convicted of multiple counts.  Likewise, the Probation Department's calculations of Jean Phillippe's and Trevor Cole's criminal histories are correct.

Addressing the arguments made in Jean Phillippe's sentencing submissions:

- The Probation Department correctly counted his September 4, 2006 and his January 9, 2007 arrests (and the subsequent convictions) separately because, although they were combined for disposition, they were separated by an intervening arrest.  *See* U.S.S.G. § 4A1.2(a)(2).

- The Probation Department correctly provided two criminal history points for Jean Phillippe's January 16, 2007 conviction, as he was resentenced on August 2, 2007 to six months' imprisonment.  *See* U.S.S.G. § 4A1.1(b).

- The Probation Department correctly gave eight criminal history points for Jean Phillippe's six marijuana convictions – one point for the November 22, 2005 conviction (for which he received a sentence of time served), two points for the January 16, 2007 conviction (for which he received a sentence of six months' imprisonment), one point for the November 22, 2006 conviction (for which he received a sentence of a fine), one point for the January 30, 2007 conviction (for which he received a conditional discharge), two points for the January 16, 2007 conviction (for which he received a sentence of six months'

imprisonment), and one point for his March 2, 2009 conviction (for which he received a sentence of a fine).

Addressing the argument made in Trevor Cole's sentencing submission:

- Trevor Cole has two convictions for "crimes of violence" that qualify for purposes of the Career Offender provisions in the Guidelines.  *See* U.S.S.G. § 4B1.1(a); 4B1.2(c) (providing that, to count as a prior felony conviction for career offender purposes, the conviction must count separately under Sections 4A1.1(a), (b), or (c)).  Cole's counsel claims – without any evidence – that Cole was told at the time of his plea for his first robbery conviction that the conviction could never be used against him to increase a sentence.  This would be a highly unusual promise from Bronx County Supreme Court, and should not be credited without evidence beyond Cole's present counsel's assertion.  Even if it is credited, it makes no difference what someone may have told him at that previous proceeding.  Moreover, Cole's Guidelines range would be life plus seven years even if Cole were not considered a Career Offender under the Guidelines range, and, as explained below, the Government recommends such a sentence irrespective the Guidelines calculation of Cole's criminal history.

Accordingly, both defendants have a Guidelines range of life plus seven years' imprisonment.

## C.      The Court Should Impose a Guidelines Sentence.

Turning now to the question of what sentence the Court should impose, the Government respectfully submits that the appropriate sentence for both defendants is life imprisonment.

Most fundamentally, the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), strongly weigh in favor of a life sentence.  During the *Fatico* hearing held on January

15, 2014, the Court heard from the victims about the impact of the defendants' crimes on them –
how, at the time, they felt they would die, and how the Female Victim has become a shell of her
formal self – not going out, not socializing, always afraid.  It bears noting that, while the Female
Victim was held captive in her apartment for days as she lay beaten, bound, and blindfolded on the
floor (covered in her own urine and subsequently in one of the kidnapper's urine), Cole, Jean
Phillippe, and the other perpetrators ate, smoked cigarettes, watched television, including hours of
pornography, and Trevor Cole even had sex with Lisa Hylton.  It is hard to fathom the defendants'
level of depravity that enabled them to be so callous and so inhuman.

A Guidelines sentence would also promote respect for the law and protect society from
further crimes by Cole and Jean Phillippe.  Both defendants have long criminal histories that
include violent crimes and drug-trafficking.  They also both have exhibited depravity in their
private lives and in unrelated criminal conduct.  Cole brought his young daughter to Maryland to
sell the marijuana he stole, and he was arrested in October 2012 (almost a month after he
committed the kidnapping and robbery) for assaulting his then-girlfriend.  Jean Phillippe recruited
his brother for the robbery and kidnapping; and he kept drugs, drug paraphernalia, and drug-
trafficking equipment in his apartment, where his baby presumably stayed.  Cole and Jean
Phillippe cannot credibly claim that they could be rehabilitated and deterred – their conduct
demonstrates an utter lack of respect of the law and of all standards of human decency.

Lastly, the defendants should not receive leniency for their purported acceptance of
responsibility.  They waited until the morning of trial to plead guilty, after they had received the
3500 material from the Government and learned the identities of all the witnesses.  They cannot
credibly claim this was a close case until that moment; it was *never* close:  both Cole and Jean

Phillippe had been identified by one of the victims, Cole's phone contained photographs of items stolen from the victims, Phillippe's apartment contained items stolen from the victims, Cole's DNA was found at the Magenta Street Apartment, both Cole and Jean Phillippe's cellsite location data from their cellphones put them at the Magenta Street Apartment during the kidnapping (and at the Neill Avenue Apartment for their brief trip to Neill Avenue), and there were cooperating witnesses and civilian witnesses who knew of Cole's and Jean Phillippe's participation in the horrendous crimes.  Moreover, the defendants confuse "acceptance of responsibility" with "acceptance of the likelihood of losing at trial."  There can be no question the defendants exhibited the latter, albeit on the morning of trial, but in many respects, the defendants have never shown any signs of the former.  Indeed, although the victims were spared sitting through a trial, they were still put through the emotionally taxing experience of having to testify at the *Fatico* hearing and to relive their experiences – all so the defendants could again challenge the overwhelming evidence against them.  This is not acceptance of responsibility, and accordingly, no leniency is justified on those grounds.

The Guidelines reflect the considered judgment of the Sentencing Commission, after examining "tens of thousands of sentences and work[ing] with the help of many others in the law enforcement community over a long period of time" in an effort to fulfill the same objectives set out in Section 3553(a).  *Rita*, 551 U.S. at 349.  The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice," and accordingly, the Guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."  *Id.*  In this case – this "rare" case – the Guidelines offense level even exceeds the maximum offense level, and the Guidelines would be life for any offender, even ones without the extensive criminal histories of

Trevor Cole and Dominique Jean Phillippe.  A sentence of life is appropriate – not merely because it is a Guidelines sentence, but because it adequately addresses the goals of sentencing for these individual defendants and their horrific criminal conduct.

### IV.  CONCLUSION

For the reasons set forth above, the Government respectfully submits that the Court should impose a Guidelines sentence in this case.

Dated:      New York, New York
           January 28, 2014

                           Respectfully submitted,

                           PREET BHARARA
                           United States Attorney
                           Southern District of New York

By:      ____s/_____
           Parvin Moyne
           Timothy Sini
           Assistant United States Attorneys
           (212) 637-2510/2358

### **Certificate of Service**

I, Parvin Moyne, declare that I am employed in the Office of the United States Attorney for

the Southern District of New York, and on January 28, 2014, I caused a copy of the attached

Sentencing Memorandum of the United States of America to be served by electronic notification to

the following counsel:

Benjamin Heinrich, Esq.
Benjamin Heinrich, P.C.
189 East 163rd Street
Bronx, NY 10451
(718) 588 4400
Fax: (718) 588 4716
Email: bhesq936@aol.com

David Touger, Esq.
Peluso & Touger
70 Lafayette Street
New York, NY 10013
212-608-1234

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28

U.S.C. Section 1746.

Dated:  New York, New York
        January 28, 2014

                                        _____/s_____
                                        Parvin Moyne
                                        Assistant United States Attorney
                                        (212) 637-2510