```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -x
                                        :
UNITED STATES OF AMERICA                :   ECF CASE
                                        :
        - v. -                          :   S1 12 Cr. 802 (KBF)
                                        :
DAVID DELVA,                            :
                                        :
             Defendant.                 :
                                        :
- - - - - - - - - - - - - - - - - - - -x
```

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DAVID DELVA'S MOTION TO SUPPRESS HIS CELLULAR TELEPHONE**

 

PREET BHARARA
United States Attorney for the
Southern District of New York,
Attorney for the United States
       of America

TIMOTHY D. SINI
PARVIN MOYNE
Assistant United States Attorneys
     - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
UNITED STATES OF AMERICA            :    ECF CASE
                                    :
         - v. -                     :    S1 12 Cr. 802 (KBF)
                                    :
DAVID DELVA,                        :
                                    :
              Defendant.            :
                                    :
- - - - - - - - - - - - - - - - - -x
```

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DAVID DELVA'S MOTION TO SUPPRESS HIS CELLULAR TELEPHONE**

The Government respectfully submits this memorandum of law in opposition to defendant David Delva's motion to suppress his cellular telephone recovered from the bedroom of an apartment where Delva was residing at the time of his arrest. Delva's motion should be denied because law enforcement officers saw the cellular telephone in plain view while they were conducting a lawful protective sweep of the bedroom, and had probable cause to believe that the cellular telephone contained evidence of a crime. Its seizure was therefore lawful under the plain view doctrine.[1]

---

[1] Law enforcement obtained a valid search warrant prior to searching Delva's cellular telephone. The defendant does not challenge the validity of the search warrant or the subsequent search of the phone. He is merely challenging the initial warrantless seizure of the phone.

1

## I.   Background

### a.   Procedural History

In October 2012, Indictment, 12 Cr. 802, was filed against, *inter alia*, Trevor Cole and Dominique Jean Phillippe, charging them with various crimes in connection with a brutal kidnapping and armed robbery committed over the course of several days in early September 2012 (the "Kidnapping Offenses"). On June 4, 2013, Gregory Accilien was arrested, pursuant to an arrest warrant issued by the Honorable Ronald L. Ellis, in connection with the same Kidnapping Offenses. Law enforcement officers executed the arrest warrant at 832 South Oak Drive, Bronx, New York (the "Residence"), where they found several individuals present, including Accilien and Delva. Accilien was arrested pursuant to the arrest warrant, and Delva was arrested and initially prosecuted by the Bronx District Attorney's Office for possession of a gun and drugs, which were recovered at the Residence and the subject of Delva's initial motion to suppress.[2]

On August 19, 2013, Delva was arrested by the Federal Bureau of Investigation (the "FBI") for his involvement in the Kidnapping Offenses in this case, as well as his use of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), in connection with his possession of a gun, powder cocaine and crack cocaine on or about June 4, 2013 – the day of the

---

[2]   There was also an outstanding arrest warrant for Delva at this

arrest of Accilien at the Residence.  On October 8, 2013, Superseding Indictment, S1 12 Cr. 802 (KBF), was filed against Delva, charging him with the Kidnapping Offenses, as well as conspiracy to distribute marijuana, cocaine, and crack cocaine, in violation of 21 U.S.C. § 846, and use of a firearm in furtherance of that narcotics conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

On January 21, 2014, the Court held an evidentiary hearing in connection with Delva's first motion to suppress the gun and cocaine found in the bedroom in the Residence.  On January 27, 2014, this Court denied that motion.

At the hearing, however, Delva moved this Court to suppress a cellular telephone belonging to him that was seized from the bedroom of the Residence.

   **b. Relevant Facts**

The relevant facts pertaining to Delva's motion to suppress the cellular telephone were established at the hearing.  Specifically, on June 4, 2013, law enforcement went to the Residence to arrest Gregory Accilien pursuant to an arrest warrant.  During a lawful protective sweep of the bedroom immediately adjoining the kitchen where Accilien was arrested, law enforcement observed several items in plain view in that bedroom.  They saw (1) a gun; (2) a bag of cocaine; (3) a letter sent from prison by Dominique Jean Phillippe

---

time.

to Accilien with the address of the Residence; and (4) two cellular telephones.[3]  One of the cellular telephones was on top of the bed and one was on top of the television stand.  (Transcript from Suppression Hearing in *United States* v. *David Delva*, January 21, 2014 ("Tr."), 99).  This was the same bedroom where Delva was found, and which he claimed was his.  Law enforcement also found crack cocaine on Delva's person after they searched him incident to arrest.

The letter, which was also found in plain view in the bedroom, was written by Jean Phillippe and stated in substance and in part that Accilien and Delva should be grateful because Jean Phillippe was doing his time and not cooperating with law enforcement.  Naturally, law enforcement interpreted the letter to mean that Accilien and Delva participated in the Kidnapping Offenses with Jean Phillipe, and that they should be grateful that Jean Phillipe was not providing information about them to law enforcement.

While in the Residence, Accilien informed law enforcement that the bedroom was his, and that Delva was staying with him.  Before leaving the Residence, law enforcement seized the two cellular telephones because they believed the phones may contain evidence of the Kidnapping Offenses and of drug distribution offenses.

While transporting Accilien from the Residence to FBI headquarters, law enforcement asked Accilien to whom the phones

---

[3]    Delva does not dispute that the cellular telephones were in plain

belonged.  (Tr. at 100).  Accilien told law enforcement that one of the cellular telephones seized belonged to Mackenzie Bruno and one belonged to David Delva.  (*See id.*).

On June 14, 2013, Special Agent Reynolds of the FBI applied for and received a search warrant to search the phone belonging to Delva. In his affidavit for the search warrant, Special Agent Reynolds stated:

> On or about June 4, 2013, I arrested . . . [Delva] in his home in the Bronx, New York, while executing an arrest warrant for a different individual ("Robber-1" [Accilien]) who was charged with a violent Hobbs Act robbery that took place on September 2, 2012 through September 4, 2012 (the "Robbery"),  and who lived with . . . [Delva].  I and other law enforcement officers entered the home and observed, among other things, . . . [Delva] in one of the bedrooms walking away from the closet, which was opened.  I ordered him down to the floor.  After handcuffing . . . [Delva], I noticed that there was a small bag of cocaine on the closet floor in plain view.  Another officer entered the bedroom, and I told him in sum and substance that there were drugs on the closet floor.  When he looked in the closet, he saw (in plain view) the cocaine that I had previously saw and a gun inside of a sneaker.  In addition, upon searching . . . [Delva's] person, law enforcement recovered several dime bags of crack cocaine in his pocket, all of which were in a larger plastic bag.
>
> . . . The TARGET SUBJECT admitted in sum and substance that the drugs and gun in the closet belonged to him, and that he shared the bedroom with . . . [Accilien].

---

view.

> . . . Law enforcement also recovered in plain view a letter addressed to . . . [Delva] and . . . [Accilien],[4] from an inmate at the Metropolitan Detention Center who had previously been arrested and indicted in this District for the Robbery ("Robber-2" [Jean Phillippe]). . . . [Jean Phillippe] has been detained pending trial. The letter stated in relevant part, and in sum and substance, that . . . [Delva] and . . . [Accilien] should be grateful, because . . . [Jean Phillippe] was doing his time and not cooperating. I interpret the letter as meaning that . . . [Delva] and . . . [Accilien] participated in the robbery with . . . [Jean Phillippe], and that they should be grateful that . . . [Jean Phillippe] was not providing information about them to law enforcement.
>
> Law enforcement recovered the Cellphone from the bed of the bedroom where . . . [Delva] was arrested. . . . [Accilien] told law enforcement in sum and substance that the Cellphone belonged to . . . [Delva].

(3501-D, at p.3-5).[5]

Special Agent Reynolds further stated in his affidavit that, based on his training and experience, cellular telephones frequently contain evidence of drug distribution offenses. (*Id.* ¶ 12). He also stated that "[a]s to the Robbery, based on my review of the cellular phones belonging to at least two of the perpetrators, including . .

---

[4]   In fact, the letter was addressed only to Accilien. This was an unintentional mistake, which is not at all material to the probable cause determination to search Delva's cellular telephone.

[5]   3501-D is the search warrant application for the cellular telephone, which was provided to the Court in Special Agent Reynolds's 3500 material in connection with the January 21, 2014 suppression hearing.

. [Jean Phillippe], and phone records belonging to several of the perpetrators, I know that cellular phones were used in connection with the Robbery, and, moreover, on at least one of these phones, we recovered photographs of items stolen from the Robbery." (*Id.*).

Based on Special Agent Reynolds's affidavit, the Honorable Henry Pitman issued a search warrant to search Delva's cellular telephone. The FBI then searched the cellphone, and found, among other things, a photograph of the gun seized from the closet at the Residence.

## II. Applicable Law

In general, law enforcement officers must comply with the Fourth Amendment by obtaining a search warrant in order to seize an individual's property. *See United States* v. *Scopo*, 19 F.3d 777, 782 (2d Cir. 1994). But "[t]he 'plain view' exception to the fourth amendment warrant requirement 'authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification *and who has probable cause to suspect that the item is connected with criminal activity*.'" *United States* v. *Scopo*, 19 F.3d at 777 (citing *Illinois* v. *Andreas*, 463 U.S. 765, 771 (1983)) (emphasis added). It is well settled that under the plain view exception, a police officer may seize evidence if: (1) the evidence is "in plain view"; (2) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; and (3) "its

7

incriminating character [is] 'immediately apparent.'" *Horton* v. *California*, 496 U.S. 128, 136 (1990) (quoting *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466 (1971)); accord *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993); *Bradway* v. *Gonzales*, 26 F.3d 313, 318-20 (2d Cir. 1994); *United States* v. *Delibac*, 925 F.2d 610, 613 (2d Cir. 1991).

The plain view doctrine applies to items that are not contraband, as long as the incriminating nature of the object is immediately apparent. Indeed, one of the seminal Supreme Court cases on the plain view doctrine addresses whether certain stereo equipment was in plain view and thus properly seized without a warrant. *See Arizona* v. *Hicks*, 480 U.S. 321 (1987); *see also Warden, Md. Penitentiary* v. *Hayden*, 387 U.S. 294, 306-07 (1967)

> ("The requirements of the Fourth Amendment can secure the same protection of privacy whether the search is for 'mere evidence' or for fruits, instrumentalities or contraband. There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction.").

"[U]nder the plain view doctrine the incriminating nature of an object is generally deemed 'immediately apparent' where police have probable cause to believe it is evidence of a crime." *United States* v. *Ochs*, 595 F.2d 1247, 1258 (2d Cir. 1979) (quoting *Coolidge* v. *New*

8

*Hampshire*, 403 U.S. 443, 466 (1971) (plurality portion of opinion of Stewart, J.)). In *Texas* v. *Brown*, 460 U.S. 730 (1983), the Supreme Court explained the meaning of "immediately apparent," stating that there is no "requirement that a police officer 'know' that certain items are contraband or evidence of a crime." *Id.* at 741. Rather, it held, "[t]he seizure of property in plain view involves no invasion of privacy *and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity*." *Id.* at 741-42 (emphasis in original) (quoting *Payton* v. *New York*, 445 U.S. 573, 587 (1980)); *see also United States* v. *$557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 82-83 (2d Cir. 2002 ). As the Supreme Court has stated, this rule of law "reflects the fact that requiring police to obtain a warrant once they have obtained a first-hand perception of contraband, stolen property or incriminating evidence generally would be a 'needless inconvenience,' [*Coolidge* v. *New Hamphsire*,] 403 U.S., at 468, 91 S.Ct., at 2039, that might involve danger to the police and public." *Brown*, 460 U.S. at 739. The Supreme Court has therefore categorically held that "[i]n light of the private and governmental interests just outlined, our decisions have come to reflect the rule that if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." *Id.*

9

In evaluating whether there is probable cause to associate the property with criminal activity under the plain view doctrine, "the evidentiary significance of an item viewed must be assessed from the perspective of a law enforcement officer.  Near certainty of the article's criminal character is not necessary."  *United States* v. *Barrios-Moriera*, 872 F.2d 12, 17 (2d Cir. 1989).

For example, in *United States* v. *Agbodjan*, 871 F. Supp. 2d 95 (N.D.N.Y. 2012), the court explained "[t]o have probable cause to seize a common item [in plain view], such as a computer, there must be a reasonable probability that it will contain evidence of a crime." *Id.* at 101.  The court explained, "[c]rucial to the motion is whether the incriminating nature of the defendant's laptop, iPhone, Blackberry, camera, suitcase, and clothing was immediately apparent."  *Id.*   The court explained:

> Although these are everyday items, Agent Szydlik knew that a computer had been used in the reshipping scam.  Through his interview with Ms. Saldivar, he was aware that email, chat messaging, and instant messaging had been the primary means of communication between her and the defendant.  He also knew from experience that other electronic devices are used interchangeably with computers and are valued for their portability.  A suitcase purchased as part of the scam was still missing.  Thus, there was a reasonable probability that these items contained evidence of a crime, and Agent Szydlik had probable cause to seize them.

*Id.*

Similarly, in *United States* v. *Meregildo*, No. 11 Cr. 576(WHP), 2012 WL 4378047 (S.D.N.Y. Sept. 24, 2012), the court denied the suppression of an iPhone and iPod touch under the plain view doctrine. There, the defendant was arrested inside a small bedroom and the iPhone and iPod touch were on top of a dresser in that room.  The court reasoned that because law enforcement suspected the defendant was involved in racketeering and narcotics conspiracies – whose members used cellular phones and social media to facilitate their criminal acts – the iPhone and iPod Touch were immediately identifiable as evidence of criminal conduct.  *Id.* at *3-4.

Likewise, in *United States* v. *Chervin*, No. 10 CR 918(RPP), 2011 WL 4373928 (S.D.N.Y. Sept. 20, 2011), the court held that law enforcement properly seized a cellular telephone in the suspect's bedroom while conducting a lawful protective sweep, because the agent "knew that [the] [d]efendant was captured on cell phone wiretaps discussing the activities of the alleged fraud."  *Id.* at *5.  *See also United States* v. *Reyes*, No. 3:06 Cr. 120 (SRU), 2007 WL 419636, at *6 (D. Conn. Jan. 30, 2007)

> ("In this case, the cellular telephones plainly fall within the standard.  It was immediately apparent to Agent Perez, a trained DEA agent with over ten years of law enforcement experience, that cellular telephones contain caller logs, text messages, phone books and other information that would be highly relevant to a drug prosecution and would be very likely connected with criminal activity.  He also knew that the defendant was accused of participating in a

>large drug conspiracy, and that wiretaps were involved.  His seizure of the cellular telephones was thus entirely reasonable.");

*United States* v. *Hernandez*, 738 F. Supp. 779, 783 (S.D.N.Y. 1990) ("The remaining items—the bag of money, the beeper and the driver's license—apparently were in plain view when the deputies entered the apartment and there was probable cause to believe they constituted evidence of a crime, albeit not the one for which Hernandez was being arrested.  Accordingly, the seizure of those items as well was proper."); *United States* v. *El-Gheur*, No. 91 Cr. 328 (LBS), 1991 WL 197559, at *5 (S.D.N.Y. Sept. 24, 1991) ("We find that the cellular phone and the two scales were discovered in plain view during the protective sweep and that the officers had probable cause to believe they were evidence of a crime.  We therefore hold that the officers' seizure of this evidence was lawful and deny the defendant's motion to suppress with respect to these items."); *see also United States* v. *Rodriguez-Alejandro*, 664 F. Supp. 2d 1320, 1345-46 (N.D. Ga. 2009) (denying motion to suppress four cellular phones found in plain view in a bedroom incident to the defendant's arrest in a narcotics distribution prosecution, noting that

>[a]lthough the agents could not immediately ascertain whether all four cell phones belonged to Pelon, the phrase 'immediately apparent' does not imply 'that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the "plain view" doctrine.'  The police are required only to have probable cause to believe

12

> that the object they are viewing is contraband or evidence of a crime. All four cell phones were found lying out in the open, and agents observed all four phones while they were in the room with Pelon and announced the presence of the phones while inside the bedroom, recognizing immediately their incriminating nature in the context of a drug trafficking wiretap investigation.

(internal citations omitted) (quoting *Brown*, 460 U.S. at 741)).

Thus, the law is clear that the Fourth Amendment permits the seizure of a cellular telephone found in plain view, so long as there is probable cause that the phone contains evidence of a crime.

### III. Discussion

Here, the seizure of Delva's cellular telephone was clearly lawful under the Fourth Amendment's plain view doctrine. First, the cellular telephone was in plain view. Second, law enforcement had the right to be in the bedroom when and where they saw the cellular telephone in plain view because, as this Court has already held, they were conducting a lawful protective sweep at the time.

Finally, the cellular telephone's "incriminating character" was "immediately apparent." First, they had probable cause to believe that the cellular phone belonged to Accilien because he lived in the Residence and had told law enforcement while in the Residence that he slept in the bedroom where the cellphone was found. Indeed, they found a letter in the bedroom addressed to Accilien. Because they had probable cause to believe that Accilien was involved in the

13

Kidnapping Offenses, that cellular phones were used in connection with that crime, and that evidence of the Kidnapping Offenses was previously found on a co-conspirator's cellular phone – Trevor Cole's –, they had probable cause to seize the cellular phone.

The fact that law enforcement later learned that the cellular telephone belonged to Delva is of no moment.  First of all, the issue is whether law enforcement had probable cause to seize the phone based on the facts known to them at the time of the seizure. *See, e.g.*, *Lowth* v. *Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996); *United States* v. *Barrios-Moriera*, 872 F.2d 12, 17 (2d Cir. 1989).  For the reasons discussed, they did.

But, more fundamentally, even if they knew that the cellular phone belonged to Delva at the time of the seizure, or had some doubt as to whether the phone belonged to Delva or whether it belonged to Accilien, there was probable cause to seize the phone because they had just found a gun and cocaine in the bedroom, Delva admitted that the gun and the cocaine belonged to him and that he was residing in the bedroom, Delva had crack cocaine on his person, and the phone was found in his bedroom where the gun and cocaine were found.  *See, e.g.*, *Meregildo*, 2012 WL 4378047, at *3-4 (denying a suppression motion under similar circumstances, noting that "'[c]ellular telephones are recognized tools of the drug-dealing trade.'") (quoting *United States* v. *Lazcano-Villalobos*, 175 F .3d 838, 844 (10th Cir. 1999)); *Reyes*,

14

2007 WL 419636, at *6 (D. Conn. Jan. 30, 2007); *El-Gheur*, 1991 WL 197559, at *5; *Rodriguez-Alejandro*, 664 F. Supp. 2d at 1345-46.

Many of these facts alone would provide probable cause to seize the cellular phone, but, when they are viewed in their totality, as they must, it is clear that law enforcement had probable cause to seize the cellular phone.

## CONCLUSION

For the reasons set forth above, the Court should deny the defendant's motion in its entirety.

Dated:      February 4, 2014
            New York, New York

                                    Respectfully submitted,
                                    PREET BHARARA
                                    United States Attorney
                                    Southern District of New York


                            By:     _____/s/_____
                                    Timothy D. Sini
                                    Parvin Moyne
                                    Assistant United States Attorneys

**AFFIRMATION OF SERVICE**

Timothy D. Sini, pursuant to Title 28, United States Code, Section 1746, declares:

I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York. On February 4, 2014, I caused a copy of the foregoing Memorandum of Law in Opposition to defendant David Delva's Motion to Suppress His Cellular Telephone to be served on the following by filing a copy via ECF:

    Ira D. London
    Law Office of Ira D. London (NYC)
    99 Park Avenue, Suite 1600
    New York, NY 10016
    (212) 683-8000
    Fax: (212) 683-9422
    Email: iradlondon@aol.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated:    February 4, 2014
            New York, New York

                                      _____/s/_____
                                      Timothy D. Sini
                                      Assistant United States Attorney
                                      (212) 637-2358